DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County jury verdict finding Appellant guilty of complicity in aggravated burglary[1], a felony of the first degree, in violation of R.C. 2911.11(A)(1) (B) and 2923.03(A)(2)(3) (F), and complicity in aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01 (A)(3) (C) and 2923.03(A)(2)(3) (F). On *Page 2 
appeal, Appellant raises four assignments of error, contending that (1) the trial court abused its discretion in striking Roger Burkhart's testimony as to where his son was located when the crime occurred on the ground that it constituted an alibi defense; (2) even if Roger Burkhart's testimony can be characterized as "alibi" testimony, exclusion of the testimony on the ground that defense counsel had not given notice of intent was an abuse of discretion; (3) trial counsel was ineffective because she did not file a notice of alibi; and (4) the conviction is against the manifest weight of the evidence. Because we conclude that the trial court properly exercised its discretion in characterizing and excluding Roger Burkhart's testimony as alibi testimony, we overrule Appellant's first and second assignments of error. Because we conclude that Appellant has failed to meet his burden of proving ineffective assistance of counsel, we overrule Appellant's third assignment of error. Further, in light of our conclusion that Appellant's convictions were supported by competent, credible evidence, we overrule Appellant's fourth and final assignment of error. Accordingly, the judgment of the trial court is affirmed.
 FACTS {¶ 2} On the evening of January 2, 2008, Appellant, Joshua Burkhart, was at his residence with his family when a few of his friends, including *Page 3 
Ricky Boice and Britney Perrera stopped by and asked him to go to a party with them. Although Appellant initially declined, he changed his mind and decided to leave with his friends. Once in the car, the group drove to Giant Eagle where Burkhart and Perrera purchased vodka. The group then drove to Perrera's apartment located on the third floor at Marietta Mills. After drinking some vodka and being at Perrera's apartment for about forty-five minutes, Appellant and Ricky Boice decided to leave. However, as they were leaving, Perrera gave them three dollars and asked them to bring her food from Wendy's.
 {¶ 3} The two men left on foot en route to Wendy's but when they saw that the lights were off and the restaurant was closed, Boice and Appellant decided to walk past Autozone to the Duke and Duchess store. Both men entered the store and Appellant initially stayed near the door while Boice shopped. Boice purchased three bags of chips and the two men again left on foot, proceeding towards Boice's father's house, which is located very near the residence of the victim in this case. Boice allegedly planned to enter and steal his father's van keys so the two could have access to a vehicle. Appellant remained outside for some time until Boice exited the house, without the keys. Although there are differing versions of what exactly happened after that, it is undisputed that at some point later that night, *Page 4 
Appellant, and later Boice, both arrived back at Perrera's apartment, although separately.
 {¶ 4} At approximately 1:30 a.m. in the early morning hours of January 3, 2008, the victim, Homer Lee, was awakened while sleeping in his bed. After being awakened and sensing someone was in his room, Mr. Lee was struck in the face and beaten. He was also robbed of his wallet, keys and two watches. The victim contacted authorities who immediately responded and conducted an investigation. Appellant was subsequently taken to the hospital for treatment of his eye injuries, which ultimately required him to undergo surgery on a later date at another hospital.
 {¶ 5} As a result of the investigation, Appellant and Ricky Boice were brought in for questioning and were eventually arrested and charged in connection with the crimes. Appellant, in particular, was indicted on charges of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1) (B), complicity in aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1) (B) and 2923.03(A)(2)(3) (F), complicity in aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01
(A)(3) (C) and 2923.03(A)(2)(3) (F), and complicity in felonious assault, a felony of the second degree, in violation of RC. 2903.11(A)(1) (D) and *Page 5 
2923.03(A)(2)(3) (F). Appellant pled not guilty to each count of the indictment and the matter proceeded to a jury trial on March 19, 2008.
 {¶ 6} At trial, the victim, Mr. Homer Lee, testified that although he is hard of hard of hearing and did not have his hearing aid in, while he was being beaten, he heard his attacker say something to someone else and then the bedroom light flipped on and then immediately off. Mr. Lee stated that due to where the lamp was situated in relation to his bed, that another person must have been present in the room, in addition to his attacker. Mr. Lee testified that he waited a while after his attacker left, and then called the police. He also testified that the intruders must have entered through the back door, which had been closed when he went to bed, but which he found wide open after the attack.
 {¶ 7} The victim's daughter, Julia Freeland, also testified at trial. She testified that she received a call from her father at 1:39 a.m. on January 3, 2008, informing her that he had been beaten up and robbed. She also testified regarding the injuries her father sustained as a result.
 {¶ 8} Britney Perrera, Appellant's girlfriend at the time the crime was committed, testified at trial that when Boice and Appellant left her apartment on the evening of January 2, 2008, she asked them to bring her back food from Wendy's. She testified that the two men were gone for a while, *Page 6 
because she remembered being aggravated with the wait for them to return. Perrera testified that Appellant returned to her apartment alone, without Boice, that he looked pale, that his hand was bleeding, that he was acting hysterical and was saying that he wanted to go home and wanted to know where Boice was. Perrera testified that Appellant initially told her that the two had gotten into an argument with some guys driving by and that he had taken off running, fell and cut his hand.
 {¶ 9} Perrera testified that she and Appellant waited for Boice to return and that when he finally came, he entered and made a statement to Appellant that he thought he had killed him [the victim]. Perrera testified that Appellant then called his father to pick him up. Perrera further testified that while walking Appellant out, Appellant told her that the two men had "hit a lick," meaning that they robbed someone, and that it had gone wrong. Perrera testified that Appellant stated that he was outside and was supposed to be the lookout, but that he entered the house when he heard a commotion inside. Perrera testified that Appellant told her that when he went into the house, he saw Boice assaulting a man and that Appellant got scared and ran to Perrera's, slipping, falling and cutting his hand on the way there. Perrera also testified that Appellant mentioned something to her about turning a bedroom light on and off and then running from the house. She further *Page 7 
testified that Appellant had mentioned wanting to "hit a lick" throughout the week and specifically had mentioned that he wanted to break into a machine at Buckeye Park. Perrera also testified regarding a prior, inconsistent statement she had provided to law enforcement, explaining that at the time of her earlier statement, she was pregnant with Appellant's child and was trying to protect him, but that she had since miscarried, and was now telling the truth.
 {¶ 10} Several members of law enforcement also testified at trial. Briefly summarizing their testimony, the various officers testified to responding to the scene of the crime, finding the victim injured, being informed that the victim's wallet, car keys and two watches had been stolen, determining the point of the entry into the house was the back door and discovering two sets of footprints, one of which had a very distinct print, in the back of the victim's house, leading to the victim's residence and then away from the residence into a bushy area. The officers testified that upon searching a wider radius of the crime scene, they picked up the same two sets of footprints at a nearby Autozone and tracked them to a nearby Duke and Duchess station, where the store clerk informed them that two young men had been in the store earlier. The officers were ultimately able to view the store surveillance video, which identified two young men, later *Page 8 
determined to be Boice and Appellant. The store clerk informed the officers that the men purchased three bags of chips, which included Sun chips and Frito twists.
 {¶ 11} The investigating officers then left the store and continued to follow the footprints, when one officer slipped and fell. The officer testified that when he fell, he shone his flashlight on the ground to discover a patch of ice, as well as a pile of spilled chips. Concluding that the suspects must have slipped in the same area and spilled chips, the officers continued on, ultimately arriving back to the victim's residence, where they again viewed the two sets of footprints in a clearing in the brush behind the victim's residence, and also found spilled Frito twist chips there.
 {¶ 12} Patrolman McClelland testified that when Appellant was questioned the next morning, Appellant admitted to being with Boice at the Duke and Duchess station the prior evening. Appellant led McClelland to Boice's residence, which was located in the immediate vicinity of the victim's residence. Once at Boice's residence, McClelland testified that law enforcement recovered the victim's wallet, keys, watches, as well as the boots matching one of the sets of footprints outside the victim's residence.
 {¶ 13} Officer Meek testified that he had both Boice and Appellant brought in for questioning. Officer Meek testified that Appellant told him *Page 9 
different stories during his questioning of him. First, Appellant initially admitted to being with Boice at the Duke and Duchess station, but denied any other involvement with him that evening. However, after being confronted with Boice's written statement, Appellant then admitted to leaving the Duke and Duchess station and going with Boice to what Appellant believed to be Boice's father's house for about forty five minutes and waiting outside. Officer Meek testified that Appellant was adamant that he was not involved and that he knew nothing about spilled chips.
 {¶ 14} Appellant's case consisted of testimony from himself and his father. Appellant's father, Roger Burkhart, essentially testified that his son was at home on the evening in question until some friends, including Boice and Perrera stopped by. Burkhart testified that he received a call later that night from his son asking for a ride and that he went to pick him up at Perrera's apartment and brought him home. Although Burkhart attempted to testify to certain timeframes that he received the call from his son and when he picked his son up, the prosecution objected to the testimony as constituting alibi evidence for which no notice had been provided. As a result, the trial court excluded Burkhart's testimony, but only as to time.
 {¶ 15} Appellant testified in his own defense at trial and denied any involvement or knowledge of the crimes at issue. While he admitted to *Page 10 
being at the Duke and Duchess station with Boice and then going to what he believed to be Boice's father's house to steal car keys, he denied any criminal involvement with Boice. Specifically, Appellant testified that when Boice started talking about wanting to "hit a lick," or rob a house, that he decided to leave and return to Perrera's. He further testified that when Boice eventually returned to Perrera's and made statements indicating he had done something wrong, that Appellant called his father for a ride home and left.
 {¶ 16} After hearing the evidence presented, the jury returned a verdict of guilty on the charges of complicity in aggravated burglary[2] and complicity in aggravated robbery and the trial court sentenced Appellant to eight year prison terms on each conviction, to be served concurrently. It is from this judgment of conviction that Appellant now brings his timely appeal, assigning the following errors for our review.
 ASSIGNMENTS OF ERROR
"I. THE TRIAL COURT ABUSED ITS DISCRETION IS STRIKING ROGER BURKHART'S TESTIMONY AS TO WHERE HIS SON WAS LOCATED WHEN THE CRIME OCCURRED ON THE GROUND THAT IT CONSTITUTED AN ALIBI DEFENSE.
II. EVEN IF ROGER BURKHART'S TESTIMONY CAN BE CHARACTERIZED AS "ALIBI" TESTIMONY, EXCLUSION OF THE TESTIMONY ON THE GROUND THAT DEFENSE *Page 11 
COUNSEL HAD NOT GIVEN NOTICE OF INTENT WAS AN ABUSE OF DISCRETION.
III. TRIAL COUNSEL WAS INEFFECTIVE BECAUSE SHE DID NOT FILE A NOTICE OF ALIBI.
IV. THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENTS OF ERROR I AND II {¶ 17} Because Appellant's first two assignments of error are interrelated, we will address them in conjunction with one another for ease of analysis. In his first assignment of error, Appellant contends that the trial court abused its discretion in striking Roger Burkhart's testimony as to where his son was located when the crime occurred on the ground that it constituted an alibi defense. In his second assignment of error, Appellant contends that even if Roger Burkhart's testimony can be characterized as "alibi" testimony, exclusion of the testimony on the ground that defense counsel had not given notice of intent was an abuse of discretion. Appellant essentially argues that the trial court mischaracterized the nature of Roger Burkhart's testimony as alibi testimony when it was actually intended to be testimony offered in support of Appellant's defense theory of abandonment. Appellant argues that by characterizing the testimony as alibi testimony and excluding it, he was denied the ability to present a complete defense of abandonment. *Page 12 
 {¶ 18} Crim. R. 12.1 governs notice of alibi and provides that:
"Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
 {¶ 19} When reviewing a trial court's decision to exclude alibi evidence, we determine whether the trial court abused its discretion.State v. Jones (Apr. 14, 1998), Adams App. No. 97CA648, 1998 WL 177573; citing, State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180;State v. Hutton (Mar. 26, 1992), Meigs App. No. 456, 1992 WL 79581. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. Jones, supra; State v.Lessin (1993), 67 Ohio St.3d 487, 1993-Ohio-52, 620 N.E.2d 72; Rock v.Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. In applying the abuse of discretion standard, we are not free to substitute our judgment for that of the trial court. Jones, supra; In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138, 566 N.E.2d 1181 citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. *Page 13 
 {¶ 20} Requiring the defendant to give notice of an alibi defense to the state insures a fair trial for all parties. Jones, supra; State v.Smith (1977), 50 Ohio St.2d 51, 53, 362 N.E.2d 988; Williams v.Florida (1970), 399 U.S. 78, 90 S.Ct. 1893. While Crim. R. 12.1 requires a defendant to file timely notice of an alibi defense, it also gives the trial court the discretion to waive the notice requirement. If the testimony of an alibi does not surprise or otherwise prejudice the state and the defendant did not file a Crim. R. 12.1 notice in good faith, the interest of justice may require admission of the alibi testimony.Smith, 53.
 {¶ 21} We begin by considering the testimony at issue and the court's characterization of it as alibi testimony. As set forth above, at trial, Appellant's father, Roger Burkhart, testified that his son called him for a ride home on the evening in question and that he picked him up at Perrera's apartment and took him home. Burkhart attempted to testify that he received the call from his son at about 1:00 a.m. and picked him up at about 1:15 a.m; however, the prosecution objected that such testimony was inadmissible alibi testimony as no notice of intent to present an alibi had been filed. Although Appellant claims on appeal that his father's testimony was intended to further an abandonment defense, the testimony clearly constitutes alibi testimony in that Appellant's father's testimony attempted *Page 14 
to place Appellant somewhere other than the crime scene during the commission of the crime.
 {¶ 22} Here, the record reflects that a notice of alibi was never filed prior to trial. The testimony of Roger Burkhart clearly resulted in surprise to the prosecution and the prosecution objected to the allowance of the testimony. At trial, it was represented to the court that defense counsel was unaware of the particular testimony at issue until one day prior to trial. On appeal, Appellant contends that defense counsel was offering the testimony, not as alibi testimony, but rather in support of Appellant's abandonment defense. However, in light of the fact that Appellant's father's testimony attempted to place Appellant somewhere other than the scene of the crime when it was being committed, resulting in surprise to the prosecution, we cannot conclude that the trial court abused its discretion in classifying it as alibi testimony and excluding it due to lack of proper notice. Further, it should be noted that Roger Burkhart's testimony was not excluded in its entirety, but was simply stricken insofar as it provided certain timelines. The jury was still permitted to consider Roger Burkhart's testimony that Appellant called him for a ride and that he picked Appellant up at Perrera's apartment and took him home, which was consistent with Appellant's own testimony. *Page 15 
 {¶ 23} Appellant further suggests in his second assignment of error that "[b]ased upon what is in the record, it is apparent that the trial court believed it had no discretion with regard to allowing Roger Burkhart's testimony." Appellant argues that the failure to exercise discretion under the mistaken belief that discretion is not permitted almost always results in reversible error. We disagree with Appellant's argument as it relates to the trial court's understanding of its discretion in this matter. Contrary to Appellant's assertions, there is nothing in the record to suggest that the trial court did not understand that it possessed the discretion to exclude or admit the alibi testimony.
 {¶ 24} Although the record indicates that a bench conference was held, a record of that conference was apparently not made as it is not included in the transcript before us. "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." App. R. 9(C). It was Appellant's duty to ensure that a transcript of all relevant proceedings was included in the record. Failing that, it was his duty to develop an agreed statement of the record that the trial court was able to verify. Because Appellant provided neither transcripts nor a valid statement of the bench *Page 16 
conference under App. R. 9(C), to the extent his assignment of error pertains to what occurred during the bench conference, we must defer to the judgment of the trial court. In such circumstances we must "presume the regularity of the proceedings and the validity of the court's judgment." Proctor v. Hall, Lawrence App. Nos. 05CA3, 05CA8,2006-Ohio-2228, at ¶ 20.
 {¶ 25} Further, although a record of the bench conference was either not created or not provided to us on appeal, the parties did make a record in open court after the bench conference was concluded. The record of that discussion demonstrates that not only was the trial court aware of the seven-day filing requirement related to intent to use alibi testimony, it was also aware that in the event of failure to file the required notice, it was "permitted," not required, to exclude such testimony. As a result, the court suggested that a limiting instruction be given in order to avoid a mistrial. Both parties agreed and the matter proceeded with an instruction to the jury that it was to disregard Roger Burkhart's testimony, but only insofar as it related to time.
 {¶ 26} Thus, we conclude, based upon the portion of the record that is before us, as well as the absence of a record of the bench trial, that the trial court properly exercised its discretion in limiting Appellant's father's alibi *Page 17 
testimony. Accordingly, Appellant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III {¶ 27} In his third assignment of error, Appellant contends that his trial counsel was ineffective because she did not file a notice of alibi. Curiously, and despite his prior argument that the testimony at issue did not constitute alibi testimony, Appellant now argues that "defense counsel's failure to present the prosecution with a notice of alibi in compliance with either Ohio Rule of Criminal Procedure 12.1 or Ohio Revised Code section 2945.58 deprived [him] of a key element of his defense, his father's testimony placing him at home at the time of thecrimes for which he was convicted were committed." (Emphasis added). Appellant argues that the trial court's limiting instruction, given as a result of his counsel's failure to file a notice of alibi, made Roger Burkhart's testimony suspect. Appellant essentially argues that if the limiting instruction had not been given, the jury would have placed less weight on Perrera's testimony, and "may well have found Burkhart innocent."
 {¶ 28} As we noted in State v. Jones, supra, the proponent of an ineffective assistance of counsel claim must meet the two-part test ofStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, to prevail. *Page 18 State v. Taylor (1997), 78 Ohio St.3d 15, 1997-Ohio-243, 676 N.E.2d 82. First, it must be proven that the attorney made errors so serious that counsel was not functioning as the "counsel" guaranteed by theSixth Amendment to the U.S. Constitution. Strickland; Taylor; State v.Awkal (1996), 76 Ohio St.3d 324, 1996-Ohio-395, 667 N.E.2d 960. In so proving, the proponent must show that counsel's representation fell below an objective standard of reasonableness. Strickland; Taylor.
Second, and analytically separate is whether the defense at trial was prejudiced by counsel's ineffectiveness. Strickland; State v.Ballew, 76 Ohio St.3d 244, 1996-Ohio-81, 667 N.E.2d 369. To show that he has been prejudiced, the appellant must prove that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. Further, and as noted in State v. Fritz, Seneca App. No. 13-06-39, 2007-Ohio-3138:
"Generally, a trial counsel's decision whether to call a particular witness falls within the rubric of trial strategy, and will not be second guessed by a reviewing court. State v. Williams,99 Ohio St.3d 493, 2003-Ohio-4396. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45."
 {¶ 29} As set forth above, Crim. R. 12.1 requires a notice of intent to present alibi testimony be filed at least seven days prior to trial. Here, there is no question that the notice was not filed. In fact, the trial transcript *Page 19 
reveals that Appellant's trial counsel represented to the court, on the record, that she was unaware of the alibi testimony at issue until she was informed by telephone the night before the trial began. Although counsel made a decision to call Roger Burkhart to testify at trial, the record also reveals that Appellant's counsel did not specifically question Roger Burkhart regarding events occurring during the timeframe the crime was committed. Instead, Roger Burkhart, in describing the events of the evening, volunteered the information related to the time Appellant called him and when he arrived at Perrera's to pick Appellant up. Thus, Appellant's counsel did not elicit the information that was eventually stricken from the record.
 {¶ 30} As reasoned in Fritz, trial counsel may have employed a reasonable trial strategy in this case by choosing not to attempt to elicit alibi testimony from Roger Burkhart. For instance, some of the still photos from the convenience store indicate that Appellant and Boice were in the store at 12:12 a.m. Based upon this and believing Appellant's own testimony that they left and went to Boice's father's house where they remained for about forty-five minutes, as well as Appellant's testimony that he then walked back to Perrera's where he waited fifteen minutes for Boice downstairs and another thirty minutes for Boice upstairs, there is a substantial conflict between Roger Burkhart's and Appellant's own testimony. Trial counsel *Page 20 
may have, upon being informed of the existence of the alibi testimony on the eve of trial, made a strategic decision not to attempt to elicit alibi testimony from Roger Burkhart, which conflicted with her client's own version of events, while still having Burkhart testify as to events only.
 {¶ 31} In light of the foregoing, we cannot conclude that Appellant met the first prong of Strickland's two-part test. Further, even had Appellant met the first prong, Appellant's argument that the jury "may well have found [him] innocent" falls short of proving, or even asserting, that but for counsel's errors the outcome of the trial would have been different. Because Appellant has failed to demonstrate that trial counsel was deficient or that such deficiency resulted in prejudice to him, we cannot conclude that Appellant's trial counsel was ineffective. As such, Appellant's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 32} In his fourth assignment of error, Appellant contends that his conviction is against the manifest weight of the evidence. In support of this assignment of error, Appellant essentially challenges the credibility of Perrera's testimony in general, and also argues that the only logical inference from both Perrera's trial testimony, as well as her prior inconsistent statement is that because Burkhart returned to her apartment *Page 21 
before Boice, that Boice either acted alone or in concert with someone else, not Appellant.
 {¶ 33} When an appellate court reviews a claim that a verdict is against the manifest weight of the evidence, the conviction may not be reversed unless the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457,473, 698 N.E.2d 440; State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814; State v. Davis (1988), 49 Ohio App.3d 109, 113,550 N.E.2d 966. Because the gist of the assignment of error also challenges credibility of prosecution witnesses, we also point out that the weight of the evidence and the credibility of witnesses are issues that the trier of fact must decide. State v. Dye (1998),82 Ohio St.3d 323, 329, 1998-Ohio-234, 695 N.E.2d 763; State v. Ballew at 249;State v. Williams (1995), 73 Ohio St.3d 153, 165, 1995-Ohio-275,652 N.E.2d 721. The trier of fact is free to believe all, part or none of the testimony of each witness. State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Caldwell (1992), 79 Ohio App.3d 667,679, 607 N.E.2d 1096; State v. Harriston (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144. *Page 22 
 {¶ 34} In order to secure a conviction against Appellant for complicity to commit burglary, the State was required to prove that Appellant, with the kind of culpability required for the commission of an offense, aided, abetted or conspired with another to commit an offense, and by force, stealth, or deception, trespassed in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, that being the residence of the victim, Mr. Lee, when another person other than an accomplice of the offender was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense.
 {¶ 35} In order to secure a conviction against Appellant for complicity in aggravated robbery, the State was required to prove that Appellant, with the kind of culpability required for the commission of an offense, aided, abetted or conspired with another to commit an offense, and in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, inflicted, or attempted to inflict, serious physical harm on another. Further, as provided in the complicity statute, "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(A)(2)(3) (F). *Page 23 
 {¶ 36} The victim testified that he awakened at approximately 1:30 a.m in the early morning hours of January 3, 2008, when he sensed someone in his bedroom. He testified that he was attacked and that during the attack another individual quickly flipped a light on and off in his bedroom. Thus, the victim testified that he was sure that two individuals were present during the crime. The victim further testified that the point of entry was the back door of his house, which he had closed and attempted to lock before going to bed, but which he found wide open after the attack. The victim further testified that his wallet, car keys, and two watches were stolen from him.
 {¶ 37} Appellant admitted at trial that he was with Ricky Boice most of the evening on the night in question, including walking with Boice from Perrera's house, past Autozone, to the Duke and Duchess station, and then to Boice's father's house, which is located very close to the victim's residence. However, Appellant testified that when Boice began to mention he wanted to break into some houses, he decided not to participate and instead returned to Perrera's apartment.
 {¶ 38} Several members of law enforcement, however, testified as to their investigation of the crime scene regarding the presence of two sets of footprints outside of the victim's residence, as well as along the route from the Duke and Duchess station, where it is undisputed that Appellant visited *Page 24 
with Boice. They further testified to recovering the same type of chips that were purchased by the men at the Duke and Duchess station, after they found them scattered along the footprint path, and also in a clearing behind the victim's residence, where they identified two sets of footprints.
 {¶ 39} Britney Perrera testified that Appellant had mentioned wanting to "hit a lick" throughout the prior week. Further, Perrera testified that before leaving her apartment on the night in question, Appellant told her that he had been involved with Boice in breaking into a house, as the lookout, but that it had gone wrong. She testified that Appellant told her that when he heard a commotion inside, he entered the house and turned a bedroom light on and off and then left. Thus, Perrera's testimony is consistent with that of the victim, who was adamant that there were two people in his house that night.
 {¶ 40} In light of this evidence, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice by finding Appellant guilty of complicity in burglary and complicity in aggravated robbery. We acknowledge that Appellant presented evidence of a contrary version of events than that provided by Perrera and claims that he did not participate in the commission of the crimes at issue. However, it is obvious that the jury did not find that evidence to be credible, but rather relied on Perrera's *Page 25 
testimony, which is well within its province as the trier of fact. As such, we overrule Appellant's fourth and final assignment of error. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED. *Page 26 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] However, as noted by the trial court in its sentencing entry, based upon the Supreme Court of Ohio's recent holding in State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, the trial court found that the indictment charging Appellant with the first degree complicity in aggravated burglary was deficient and therefore could not support a conviction for a felony of the first degree. The trial court did, however, find that the indictment was sufficient to support a conviction for second degree complicity in burglary, in violation of R.C. 2911.12(A)(1) and R.C. 2923.03(A)(2)(3) (F), a lesser included offense of the offense charged in the indictment, and proceeded to sentence Appellant on that charge instead.
[2] As set forth above, this charge was later reduced at sentencing to second degree complicity in burglary and Appellant was sentenced on the reduced charge.
 *Page 1