[Cite as *State v. Adams*, 2012-Ohio-2719.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   08 MA 246 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | AND |
| BENNIE ADAMS, | ) | JUDGMENT ENTRY |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:     Application for Reopening.


JUDGMENT:                                      Application for Reopening Denied.


APPEARANCES:
For Plaintiff-Appellee:                       Attorney Paul Gains
                                                        Prosecuting Attorney
                                                        Attorney Ralph Rivera
                                                        Assistant Prosecuting Attorney
                                                        21 West Boardman Street, 6th Floor
                                                        Youngstown, Ohio  44503


For Defendant-Appellant:                  Attorney Timothy Young
                                                        Ohio State Public Defender
                                                        Attorney Kimberly Rigby
                                                        Attorney Kathryn Sanford
                                                        Assistant Ohio State Public Defenders
                                                        250 East Broad Street,, Suite 1400
                                                        Columbus, Ohio  43215


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                                        Dated:  June 13, 2012


PER CURIAM:

¶{1} Defendant-appellant Bennie Lee Adams has filed an application to reopen his appeal. He raises seven issues that he contends his prior appellate counsel should have raised in the direct appeal of his conviction and death sentence. For the following reasons, this application for reopening is denied and the request for appointment of counsel is therefore also denied.

## STATEMENT OF THE CASE

¶{2} In the fall of 2008, appellant was sentenced to death for the aggravated murder of Gina Tenney which occurred at the end of 1985. As the crime was committed prior to January 1, 1995, the direct appeal proceeded through this court as opposed to proceeding directly to the Ohio Supreme Court. See Ohio Const. Schedule §12; R.C. 2929.05.

¶{3} Appellant's attorneys filed a five hundred twenty-eight page brief in this court, the longest brief encountered by this court and, according to our review of extensions granted by the Ohio Supreme Court in capital cases, possibly by that court as well. On October 14, 2011, we affirmed appellant's conviction and death sentence in a ninety-five page opinion. See *State v. Adams*, 7th Dist. No. 08MA246, 2011-Ohio-5361. Appellant's appeal to the Ohio Supreme Court is pending.

¶{4} On January 12, 2012, the Ohio Public Defender's Office filed in this court a timely application to reopen appellant's appeal under App.R. 26(B). They asked to be appointed as his counsel for purposes of filing the application to reopen and thereafter if reopening is permitted. Attached to the application for reopening are the affidavits of the attorneys who represented appellant in his direct appeal to this court and who are currently representing him in the Ohio Supreme Court. They claim that they did not notice the issues now raised, that they would have raised them in their appellate brief had they thought of them, and that they believe the issues now raised are meritorious and deserve review by this court.

## REOPENING

¶{5} Pursuant to App.R. 26(B), a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence based on a claim of ineffective assistance of counsel. App.R. 26(B)(1). The defendant must set forth one or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits or that were considered on an

incomplete record due to appellate counsel's deficient performance. App.R. 26(B)(2)(c).

¶{6} An application for reopening shall be granted if there is a genuine issue as to whether the defendant was deprived of the effective assistance of counsel on appeal. App.R. 26(B)(5). If the court grants the application, it shall appoint counsel to represent the defendant if he is indigent and not currently represented. App.R. 26(B)(6)(a). If the application is granted, the case shall proceed as on an initial appeal except that the court may limit its review to arguments not previously considered, and the briefs on reopening shall address the claim that prior appellate counsel rendered deficient performance which prejudiced the defendant. App.R. 26(B)(7).

¶{7} Thus, in determining whether a defendant-appellant has received ineffective assistance of appellate counsel, we apply the two-pronged analysis from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): conduct that fell below an objective standard of reasonableness and a reasonable probability the results would have been different. *See State v. Were*, 120 Ohio St.3d 85, 2008-Ohio-5277, 896 N.E.2d 699, ¶ 10-11. Thus, the applicant must prove that counsel was deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims on appeal. *Id.* at ¶ 11, citing *State v. Sheppard*, 91 Ohio St.3d 329, 330, 744 N.E.2d 770 (2001). In seeking reopening, the appellant bears the burden of demonstrating that there is a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of appellate counsel. *Id.,* citing *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998).

¶{8} Notably, appellate counsel need not raise every possible issue in order to render constitutionally effective assistance. *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, 849 N.E.2d 1, ¶ 7, citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The United States Supreme Court in *Jones* explained:

¶{9} "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Justice Jackson, after observing appellate advocates for many years, stated:

¶{10} "'One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.' Jackson, Advocacy Before the Supreme Court, 25 Temple L.Q. 115, 119 (1951).

¶{11} "Justice Jackson's observation echoes the advice of countless advocates before him and since. An authoritative work on appellate practice observes:

¶{12} "'Most cases present only one, two, or three significant questions.... Usually, ... if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention. The effect of adding weak arguments will be to dilute the force of the stronger ones.' R. Stern, Appellate Practice in the United States 266 (1981)." Jones, 463 U.S. at 751-752.

<u>ISSUE ONE</u>

¶{13} Appellant sets forth seven issues that he believes should have been raised in the original appeal, the first of which relates to testimony derived from an autopsy performed on December 31, 1985 by the Mahoning County Coroner. By the time of the 2008 trial, that coroner was deceased. The state filed a notice of discovery containing a coroner update and disclosing that Dr. Germaniuk, a forensic pathologist, would testify at trial. He had watched the video of the autopsy, reviewed the photographs, and the written material. Appellant contends:

¶{14} "The trial court violated Adam's Sixth Amendment right to confront the witnesses against him when it allowed Dr. Germaniuk to testify concerning an autopsy conducted twenty-three years prior by a different coroner and when it allowed the autopsy report to be admitted into evidence; trial counsel were likewise ineffective to Adams' prejudice when they failed to object to the admission of Dr. Germaniuk's testimony as well as to the admission of the autopsy report."

¶{15} In attempting to demonstrate prejudice from the admission of the pathologist's testimony, appellant complains that the pathologist both adopted and criticized the coroner's report. Appellant notes that the pathologist testified that he

would have characterized the cause of death as asphyxia instead of the phrase used by the coroner, "suffocation due to traumatic asphyxiation." (Tr. 408). The pathologist opined that the coroner should not have labeled certain wounds as superficial unless an incision was made to ensure how superficial they were. (Tr. 421). The coroner had used vitreous potassium to determine that time of death was 11:15 p.m., but the pathologist disclosed that this method is no longer reliable. (Tr. 426-428). He testified that he would have based his determination on the volume of food in the stomach compared to when she last ate and that he would have placed her death between 5:00 and 10:30 p.m. with death occurring "probably somewhere in the middle of that time." (Tr. 435-436). Finally, the pathologist stated that the coroner had no qualifications in forensic pathology but merely won a popularity contest. (Tr. 440).

¶{16} Appellant concludes that trial counsel was ineffective for failing to object to the admission of the autopsy report in the absence of the coroner's testimony as it was generated for the purpose of proving a fact at trial and for failing to object to the testimony of the forensic pathologist as he did not perform the autopsy. For purposes of reopening, appellant urges that appellate counsel should have raised this ineffectiveness of trial counsel and should have cited in support: *Melendez-Diaz v. Massachusetts*, __ U.S. __, 129 S.Ct. 2527, 2539-2540, 174 L.E.2d 314 (2009) and *Bullcoming v. New Mexico*, __ U.S. __, 131 S.Ct. 2705, 2709-2710, 180 L.Ed.2d 610 (2011).

¶{17} A testimonial statement is one with a primary purpose of establishing or proving past events potentially relevant to a later criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). A business or public record is generally admissible absent confrontation as it was created for the administration of the entity's affairs and not for the purpose of establishing some fact at trial. *Melendez*, 129 S.Ct. at 2539-2540.

¶{18} In *Melendez*, the United States Supreme Court held that a forensic laboratory report made at police request stating that a seized substance was cocaine is testimonial evidence under the Confrontation Clause. *Melendez*, 129 S.Ct. at 2532. Thus, applying the general rule, such evidence was found inadmissible unless the witness who made the statement is unavailable and the defendant had a prior opportunity to confront that witness. *Id.* (refusing to create a forensic evidence

exception), applying *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.C.t 1354, 158 L.Ed.2d 177 (2004).

¶{19} In *Bullcoming*, the state introduced a forensic laboratory report certifying the gas chromatograph results of the defendant's blood alcohol level. *Bullcoming*, 131 S.Ct. at 2709. The state did not call the analyst who signed the certification as he was on unpaid leave. Instead, the state called a different analyst who did not participate or observe the test but who was familiar with the testing used at the laboratory. The defense objected, and the state argued it was a business record. The United States Supreme Court held that the analyst's testimony was inadmissible surrogate testimony without observation and also found the certification inadmissible as testimonial evidence made for the purpose of proving a particular fact at a criminal trial. *Id.* at 2713 (certified question), 2714-2717. The Court thus concluded that the defendant had the right to be confronted with the analyst who made the certification unless that analyst was unavailable at trial and the defendant had the pretrial opportunity to cross-examine that particular analyst. *Id.* at 2716-2717.

¶{20} Notably, neither of these cases existed at the time of appellant's trial. Rather, what did exist was recent precedent in Ohio allowing into evidence both the autopsy report and the testimony of a different expert about the autopsy. That is, the Ohio Supreme Court specifically concluded that <u>an autopsy report is non-testimonial evidence</u> under *Crawford,* as it is not solely made at the behest of police in order to convict the particular defendant. *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 80-82, 88, citing R.C. 313.10 (certified records of a coroner are public records and shall be received as evidence in any criminal or civil court) and Evid.R. 803(6) (business record). In so stating, the Court specified: "An autopsy report, prepared by a medical examiner and documenting objective findings, is the 'quintessential business record.' " *Id.* at ¶ 82, citing *Rollins v. State*, 161 Md. App. 34, 81, 866 A.2d 926 (2005).

¶{21} The *Craig* Court also held that <u>a current medical examiner can give expert testimony about autopsy findings, test results, and opinion on cause of death even though a now-retired coroner performed the autopsy</u>. *Id.* at ¶ 79, cert. denied by *Craig v. Ohio*, 549 U.S. 1255, 127 S.Ct. 1374, 167 L.E.2d 164 (2007). Following Craig, this court found it permissible to admit an autopsy report prepared by the Cuyahoga County Coroner's Office where no one from that office testified and to admit

the testimony of the Columbiana County Coroner about the report and other aspects of the case. *State v. Mitchell*, 7th Dist. No. 05CO63, 2008-Ohio-1525, ¶ 104.

¶{22} This was the controlling law at the time of appellant's trial. Thus, there was no reason for defense counsel to object to the testimony of the pathologist or the admission of the autopsy report on these Confrontation Clause grounds. It would follow that appellate counsel was not ineffective for failing to raise ineffective assistance of trial counsel on this issue.

¶{23} In anticipation of this position, appellant urges that trial counsel should have objected based upon the 2004 *Crawford* decision. However, the Ohio Supreme Court's 2006 *Craig* decision found that *Crawford* did not bar autopsy reports in the absence of the drafter and did not bar a different expert from testifying on his opinion regarding the autopsy results. *Craig*, 110 Ohio St.3d306 at ¶ 81-88. As such, this would not have been a valid argument.

¶{24} We do note that *Craig,* a capital case*,* is back before the Ohio Supreme Court. Even though it is back after a prior remand for resentencing on the non-capital offenses, the Court ordered the parties to brief two issues: (1) whether the introduction of the autopsy report violated the right to confrontation under *Melendez* and (2) whether a medical examiner who did not conduct the autopsy properly testified as to cause of death in view of *Melendez. State v. Craig*, 126 Ohio St.3d 1573, 2010-Ohio-4539, 934 N.E.2d 347.

¶{25} The *Craig* Court stayed the briefing pending the United States Supreme Court decision in *Bullcoming.* When *Bullcoming* was released, the *Craig* Court stayed its briefing pending the United States Supreme Court decision in *Williams v. Illinois*, U.S. Sup.Ct. Case No. 10-8505, a case for which certiorari was granted in August of 2011. The issue in *Williams* deals with whether a state evidence rule allowing an expert to testify about DNA results performed by a non-testifying analyst violates the Confrontation Clause when there was no opportunity to confront the actual analyst. Thus, although the topics of autopsy reports and expert testimony on cause of death appear to be distinguishable topics from those involved in *Melendez, Bullcoming,* and *Williams,*[1] the Ohio Supreme Court apparently finds those cases relevant to its

---

[1]*State v. Zimmerman*, 8th Dist. No. 96210, 2011-Ohio-6156 (autopsy report non-testimonial even under new United States Supreme Court cases); *State v. Monroe*, 8th Dist. No. 94768, 2011-Ohio-

decision in stayed *Craig* case where it may reconsider its prior autopsy and expert testimony holding.

¶{26} In any event, as aforementioned, the 2006 *Craig* decision and the 2008 *Mitchell* decision represented the controlling law at the time of appellant's trial in 2008. This being the case, there was no reason for defense counsel to object to the testimony of the pathologist or the presentation of the autopsy report on these Confrontation Clause grounds. It would follow that appellate counsel was not ineffective for failing to raise ineffective assistance of trial counsel on this issue. (In addition, the 2006 *Craig* decision was still controlling law on the specific topic of autopsy reports and coroner testimony at the time of appellant's appeal.) As there was no deficient performance by counsel, the issue of prejudice is moot. Reopening on this claim is denied.

### ISSUE TWO

¶{27} The second argument appellant believes appellate counsel should have made is:

¶{28} "Trial counsel were ineffective for failing to object to the trial court's questioning of State's witnesses."

¶{29} The court held a motion in limine hearing regarding the introduction of testimony of the victim's fear or apprehension of appellant. In the sixth assignment of error in appellant's direct appeal, appellate counsel argued that the trial court's neutrality was in question because the court asked questions at the hearing rather than requiring the prosecutor to elicit the responses necessary to determine whether witnesses should be permitted to testify as to the victim's fear of appellant. It was argued that the trial judge should have refrained from taking the role of the advocate in order to avoid the appearance of impartiality.

¶{30} In addressing this argument, this court initially noted that appellant failed to object to the trial court's questions. *State v. Adams*, 7th Dist. No. 08MA246, 2011-Ohio-5361, ¶ 291. In his reopening application, appellant now argues that appellate counsel should have raised ineffective assistance of trial counsel, instead of just error of the trial court, in order to preserve this issue for appellate review. However, after

3045 (*Melendez* does not conflict with *Craig*); *State v. Hardin*, 4th Dist. No. 10CA803, 2010-Ohio-6304 (same).

noting in a single sentence that appellant did not object, we then set forth the following thorough analysis of the issue:

¶{31} "Additionally, the trial court 'may interrogate witnesses, in an impartial manner, whether called by itself or a party.' Evid.R. 614(B). 'A trial judge has a duty to see that truth is developed and therefore should not hesitate to pose a proper, pertinent, and evenhanded question when justice so requires.' *In the Matter of Gray* (Apr. 20, 2000), 8th Dist. Nos. 75984, 75985. A trial court's questioning of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the interrogation was damaging to one of the parties. Id. Rather, it is presumed that the trial court acted impartially in questioning a witness as to a material fact or to develop the truth. Id. See, also, *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 98. Moreover, leading questions are acceptable. Id. at 97.

¶{32} "In fact, an appellate court's concern with trial court questioning essentially revolves around the effect of the court's involvement on a jury. *State ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113, 119. In a bench trial or a motion hearing, these concerns are not raised. See *Gray*, 8th Dist. Nos. 75984, 75985.

¶{33} "Here, the court was attempting to ascertain preliminary issues outside the presence of the jury regarding whether there was a foundation for certain testimony. The court's involvement in the questioning of the witnesses did not project the appearance of impartiality. The leading nature of certain questions facilitated the process and focused the inquiry to those issues the court believed were relevant at that point in time. Consequently, this argument is without merit." *Adams*, 7th Dist. No. 08MA246 at ¶ 291-293.

¶{34} As can be seen, we ruled on the merits of the issue regardless of the fact that trial counsel did not raise the issue to the trial court at the motion in limine hearing. Hence, it is irrelevant that appellate counsel did not specifically raise ineffective assistance of trial counsel in assignment of error number six. This issue does not present a valid claim for reopening.

ISSUE THREE

¶{35} The third argument appellant believes his appellate counsel should have presented is:

¶{36} "Trial counsel were ineffective for failing to object to several prejudicial comments uttered by the prosecution during Adams' trial."

¶{37} Appellant first refers to two statements by a detective. First, defense counsel asked the detective if he testified already in the case, to which the detective responded, "I have." (Tr. 191). Counsel then asked, "Back in July, once in September?" The detective responded, "At suppression hearings, yes." (Tr. 192). The second statement appellant refers to involves the detective replying, in response to defense counsel's question about whether he could recall other conversations with appellant's girlfriend, "Not about this case." (Tr. 221).

¶{38} Appellant points out that, based upon these statements, trial counsel asked for a mistrial, which the trial court overruled. (Tr. 229). Appellant complains that although trial counsel asked for a mistrial based partly on these statements, counsel failed to object to these statements at the time they were made. Appellant believes this is an instance of ineffective assistance of trial counsel that should have been raised by appellate counsel in the direct appeal.

¶{39} The effect of these statements was already raised by appellate counsel in assignment of error number nine. In overruling that assignment, we did note that defense counsel neither objected to the "[n]ot about this case comment" nor the suppression hearing reference and that defense counsel was the one who brought up the existence of past testimony in the case. *State v. Adams*, 7th Dist. No. 08MA246, 2011-Ohio-5361, ¶ 322, 324.

¶{40} Still, our analysis was not based upon waiver. Rather, as to the reference to a suppression hearing, we held that this disclosure did not deprive appellant of a fair trial. *Id.* at ¶324. We pointed out that most murder cases involve suppression hearings. We also noted that there was no implication that evidence had been suppressed from the jury's viewing. *Id.* We concluded that prejudice was not apparent.

¶{41} As to the "[n]ot about this case" comment, we stated:

¶{42} "In any event, it was merely a statement of fact. It does not refer to [the] prior rape, kidnapping, and robbery case [for which appellant went to prison]. It does not even refer to the girlfriend being questioned about appellant. As the state points out, it could merely mean that they spoke about general life topics (her father was an active police officer at the time)." *Id.* at ¶ 322.

¶{43} Thus, we addressed these issues on the merits even though they had not been objected to as soon as they were made but rather were raised thereafter in a mistrial motion. As such, reopening on this matter is unnecessary.

¶{44} Appellant's reopening application then states that the prosecutor asked the detective why he believed appellant was a suspect in a burglary attempt at the victim's apartment to which the detective replied, "From what the victim told me that she was having problems --." At that point, the defense objected, and the court sustained the objection. (Tr. 243). The prosecutor continued, "So from what she had told you?" and "Without stating what she said?" (Tr. 243-244).

¶{45} In the direct appeal, appellate counsel argued in the ninth assignment of error that this was a deliberate attempt to prejudice the jury. Appellant now contends that appellate counsel should also have argued that trial counsel was ineffective for failing to object to these final two statements of the prosecutor.

¶{46} The "without stating what she said" comment is merely a caution about why the objection had been sustained and warning for the detective not to go into what the victim reported. There is nothing improper or prejudicial about this.

¶{47} The question, "So from what she had told you?" appears merely to be an attempt to get back on track. There is no indication that it was a purposeful attempt to prejudice the jury. Out-of-court statements are often admitted to explain the actions of police officers in an investigation. See *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980); *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987). The item contested here is not even a statement of the victim but an explanation that the victim's report caused the officer to conclude that appellant was a suspect in the previous attempted entry into her apartment.

¶{48} Moreover, as we opined in addressing the detective's statement, the statement was not so prejudicial as to require a mistrial. *Adams*, 7th Dist. No. 08MA246 at ¶ 326. We also pointed out that the jury already knew that the victim was "having problems" with appellant. *Id.* A connection had already been made between his watching and calling her and the recent break-in at her apartment. (Tr. 96-102, 109, 183, 368-387). It had also been explained why it seemed the potential intruder had come from inside the apartment building. (Tr. 109-110). The state's reiteration of a few words of the detective's statement, "From what she told you," does not push the effect of the detective's statement into the realm of outcome determination.

¶{49} It must also be remembered that trial counsel, after having an objection sustained, may have purposely refrained from objecting to the prosecutor's brief and partial recap in order to avoid drawing more attention to it. Finally, as set forth supra, appellate counsel is not ineffective for failing to raise every possible issue. *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, 849 N.E.2d 1, ¶ 7, citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). These appellate attorneys, in a five hundred twenty-eight page brief, raised multiple issues including ineffective trial counsel on various grounds and the effect of the detective's statement outlined above.

ISSUE NUMBER FOUR

¶{50} The fourth issue appellant believes appellate counsel should have proposed is:

¶{51} "Trial counsel were ineffective for failing to object to the trial court's failure to put on the record its factual findings regarding the denial of the motion for speedy trial."

¶{52} Appellant acknowledges that his appellate counsel raised an issue concerning the trial court's failure to state its factual findings where Crim.R. 12(F) states that the court shall state its essential findings on the record if factual issues are involved in determining a motion. *See Adams*, 7th Dist. No. 08MA246 at ¶ 133. This court explained that a trial court has no duty to state its essential findings unless the defendant requested them. *Id.*, citing *State v. Eley*, 77 Ohio St.3d 174, 179, 672 N.E.2d 640 (1996). We pointed out that appellant argued that he invoked the duty preemptively where his motion to dismiss asked the court to provide findings if it denied his motion. *Id.* We concluded that he should have raised the matter to the trial court at a time when the court could have corrected it. *Id.* at ¶ 135-136. Thus, appellant's reopening application now contends that trial counsel was ineffective for failing to raise the lack of findings prior to trial and that appellate counsel was ineffective for failing to specify that this constituted ineffective assistance of trial counsel.

¶{53} However, this court also stated that even if a trial court commits error in failing to provide findings in support of its denial of a speedy trial motion, there must be prejudice in order to reverse. *Id.* at ¶ 135, citing *State v. Sapp*, 105 Ohio St.3d 104, 2002-Ohio-7008, 822 N.E.2d 1239, ¶ 96 (if the record is sufficient to allow full review of

the motion, there is no prejudice in the failure to state findings of fact under Crim.R. 12). *See also State v. Brown*, 64 Ohio St.3d 476, 481-482, 597 N.E.2d 97 (1992) (where defendant did not ask for findings and record supports decision, reversal for failure to make findings is improper); *State v. Benner*, 40 Ohio St.3d 301, 317-318, 533 N.E.2d 701 (1988). We stated that although the trial court's judgment entry did not contain findings on this issue, the trial court did emphasize on the record at the speedy trial hearing that appellant was not charged with receiving stolen property in the pending case, a key factor in the speedy trial analysis. *Adams*, 7th Dist. No. 08MA246 at ¶ 136, citing Hrg. Tr. 112-113.

¶{54} In any event, we concluded that there was no indication of prejudice in the lacking factual findings because the record was sufficient to allow our review of the issue as could be seen by our analysis of the speedy trial issues in paragraphs 113 through 132 of the opinion. *Id.* Thus, even if ineffective trial counsel had been raised within appellant's twelfth assignment of error, this court made it clear that the defense suffered no prejudice on this matter. Accordingly, reopening is not proper on this topic.

<u>ISSUE FIVE</u>

¶{55} The fifth issue which appellant claims that appellate counsel should have raised is:

¶{56} "Following making a Batson challenge, trial counsel were ineffective for failing to object to the excusal of Jurors 11, 31, and 301."

¶{57} This argument is without merit. As we stated in our prior opinion in addressing assignment of error number seventeen, defense counsel raised *Batson* regarding Jurors 11 and 31. *Id.* at ¶ 257, 260, addressing *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Appellate counsel argued that the trial court's decision regarding the application of *Batson* was erroneous. We did not find waiver by failing to object to the trial court's decision after it was made.[2] Rather, we reviewed these contentions in full. Regarding Juror Number 31, we held:

---

[2]As is quoted infra, we did note that the defense did not dispute certain statements of the prosecutor about Juror 11. *Id.* at ¶ 261. This was not a suggestion of waiver; it just meant that the defense must have agreed that she did seem to not listen to some of the state's comments and that she did seem disappointed. These are not items that can be seen on the bare record, and there is no indication of ineffectiveness for failing to argue that the state's rationale is factually incorrect.

**¶{58}** "The trial court's decision was based on the prosecutor's credibility and its own determination of reasonableness. See *Batson*, 476 U.S. at 98; *Frazier*, 115 Ohio St.3d 139 at ¶ 64; *Bryan*, 101 Ohio St.3d 272 at ¶ 110. The court was in the best position to evaluate the statements of the prosecutor and also those made by the juror during voir dire. The state provided multiple race-neutral reasons. It was not clearly erroneous for the trial court to have found that those reasons were not pretextual and that the prosecutor's decision was not the result of purposeful discrimination. A prospective juror's equivocal answers or expressions of uncertainty about impartiality or matters pertinent to the case are sufficiently race-neutral reasons for exercising a peremptory challenge. See, e.g., *State v. Were*, 118 Ohio St.3d 448, 2008–Ohio– 2762, ¶ 65 (prospective juror had uncertain position on the death penalty); *State v. Franklin*, 7th Dist. No. 06–MA–79, 2008–Ohio–2264, ¶ 70–92 (prospective juror's attentiveness and understanding of burden of proof was uncertain). As such, this argument is overruled." *Id.* at ¶ 258.

**¶{59}** Concerning Juror Number 11, we opined:

**¶{60}** "Feeling that a juror was inattentive is a race-neutral reason. The court was present and occupied the best position to judge this. Notably, the defense, upon whom the burden of persuasion remained, did not dispute the statement. See *Rice*, 546 U.S. at 338. A belief that the juror showed disdain for the state's position is also a valid explanation. See, e.g., *State v. Person*, 174 Ohio App.3d 287, 2007–Ohio–6869, ¶ 33 (state believed that prospective juror made a disdainful facial expression during the State's questions). A belief that a juror was too focused on a non-element such as motive is also valid concern for a prosecutor. The mere fact that she watches court shows may not be a strong reason in itself, but it was accompanied by other valid concerns. For all of these reasons, it cannot be said that the trial court was clearly erroneous in deciding that the state's reasons were not pretextual. See *Frazier*, 115 Ohio St.3d 139 at ¶ 64; *Bryan*, 101 Ohio St.3d 272 at ¶ 110." *Id.* at ¶ 262.

**¶{61}** Finally, as for appellant's perception that Juror Number 301 was excused, we repeat: "the state never did end up exercising a peremptory challenge on Juror Number 301. In fact, this juror sat as an alternate. (Tr. 765). Thus, this argument is without merit." *Id.* at ¶ 263. And, as the state points out, *Batson* applies to peremptory challenges not challenges for cause, which the state lost in any event. *See State v. Lewis*, 7th Dist. No. 03MA36, 2005-Ohio-2690, ¶ 60, citing *State v.*

*Herring*, 94 Ohio St.3d 246, 256; (Tr. 443.) For all of these reasons, this argument is without merit.

## ISSUE SIX

¶{62} The sixth issue appellant urges should have been raised by appellate counsel is:

¶{63} "Trial counsel were ineffective for failing to present the testimony of a psychologist during the mitigation phase of Adams' trial."

¶{64} Appellant states that it was crucial to explain to the jury how his psychological make-up had changed over the two decades since the crime was committed. Thus, he claims ineffective assistance of trial counsel in failing to offer expert psychological testimony at sentencing in mitigation. He states that if the jury had this evidence, there is a reasonable probability that one juror would not have voted for death.

¶{65} There is no per se rule that every capital defense team must present the testimony of a psychologist in mitigation. As we noted in our prior opinion, R.C. 2929.03(D)(1) states that once a defendant requests a mental examination, he has no control over whether the jury views it. *Adams*, 7th Dist. No. 08MA246 at ¶ 386. Thus, in a direct appeal, it is typically considered a trial tactic whether the defense chooses to expose the defendant to the risk of potentially incriminating investigations. *Id. See also Wiggins v. Smith*, 539 U.S. 510, 521-522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 277-278.

¶{66} That appellant could have obtained favorable expert evidence is not a question that can be addressed in this direct appeal. We cannot assume that a psychologist who interviewed appellant would have presented mitigating evidence. *See State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 2011-Ohio-4515, 952 N.E.2d 1152, ¶ 130.

¶{67} The potential availability of favorable expert testimony is not just speculative but would also be a matter outside of the record. New matter de hors the record is not reviewable in a direct appeal. *State v. Hartman*, 93 Ohio.St.3d 274, 299, 754 N.E.2d 1150 (2001) (if establishing ineffective assistance of counsel requires proof outside the record, then such claim is not appropriately considered on direct appeal); *State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978) (the

appellate court is limited to what transpired as reflected by the record on direct appeal and cannot rely upon evidence de hors the record). And, without such evidence, there is no way to show ineffective assistance of counsel on the mitigation claim. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 105, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 350.

¶{68} Consequently, there is not a genuine issue of ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel on this matter in the direct appeal. *See State v. Herring*, 94 Ohio St.3d 246, 262, 762 N.E.2d 940 (2002) (direct appeal on failure to fully investigate mitigation). *Cf. State v. Herring*, 7th Dist. No. 03MA12, 2004-Ohio-5357, at ¶ 104 (the post-conviction presentation of evidence of what a mitigation expert could have presented). Reopening is not required on this argument.

## ISSUE SEVEN

¶{69} The final issue raised in appellant's reopening application contends:

¶{70} "The state failed to introduce sufficient evidence of the aggravated murder charge and specifications, thus depriving Adams of substantive and procedural due process."

¶{71} Appellant argues that the state failed to produce sufficient evidence that he committed aggravated murder or the specification of committing or attempting to commit aggravated burglary, aggravated robbery, rape, or kidnapping. He points out that Horace Landers was found in the bedroom containing the victim's stolen television and was originally identified by the woman waiting for the ATM at the bank. He concludes that appellate counsel were ineffective for failing to raise insufficiency of the evidence to this court.

¶{72} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict thereafter. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

Circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). *See also Adams*, 7th Dist. No. 08MA246 at ¶ 101.

**¶{73}** In this capital case, we independently reviewed the record to determine whether the evidence supported the finding that the aggravating circumstance was established beyond a reasonable doubt. *Adams*, 7th Dist. No. 08MA246 at ¶ 352, citing R.C. 2929.05(A); R.C. 2929.04(B). *See also State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 286. As we stated in the original appeal, the aggravating circumstance is that the offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated robbery, or aggravated burglary, and that appellant was the principal offender in the commission of the aggravated murder. *Adams*, 7th Dist. No. 08MA246 at ¶ 353, citing R.C. 2929.04(A)(7).

**¶{74}** We stated: "There is evidence that appellant killed the victim while or after raping her, kidnapping her, robbing her and burglarizing her residence. A rational juror could also find that appellant was the principal offender." *Id.* at ¶ 353. In ensuring that the elements were proven beyond a reasonable doubt, we then proceeded to review the most pertinent evidence:

**¶{75}** "Specifically, appellant was the victim's downstairs neighbor, who often watched her and called her late at night. She feared him. She changed her number soon after the calls began. He once slipped an odd card under her door. Her ATM card was found in his pocket the morning her body was found. There was credible evidence that he used the victim's car and ATM card the night of her murder. Her car was then parked back in front of their apartment. Her keys were found in his bathroom garbage can. Her potholder was found in his apartment. The potholder contained red head and pubic hair consistent with that of the victim; it also contained hair from an African–American. Her stolen television was discovered in appellant's room with his fingerprints on it. Semen discovered in the victim's vagina was found to match appellant's DNA.[3] As the victim knew appellant, a juror could conclude that to rape her would require him to kill her. Ligature marks on her neck and wrists establish that a

---

[3]Furthermore, after holding that it was not unconstitutional to apply new precedent on circumstantial evidence, we reviewed "the quantum of evidence presented against him at trial" and added the observation: "[i]t was established that the victim would not willingly have had intercourse with appellant." *Id.* at ¶ 103.

cord was used, showing the death was not an accidental result of the other felonies. *Id.* at ¶ 354.

¶{76} We concluded that "the evidence supports the jury's finding that the aggravating circumstance was established beyond a reasonable doubt." *Id.* at ¶ 355. In addressing a lesser included offense issue, our opinion reiterated:

¶{77} "Here, the victim was appellant's neighbor, who knew him well and could easily identify him after a rape or robbery. The victim had bruises on her face suggesting suffocation and ligature marks around her neck suggesting she was also strangled with a cord. Appellant was found in possession of many stolen objects that belonged to the victim such as her television, car keys, bank card, and potholder (with head and pubic hair attached that was consistent with that of the victim). He drove her car to a bank and used her bank card. The car was then brought back to their apartment. In the trunk was a telephone cord said to be consistent with the ligature marks on the victim's neck and wrists. The victim had repeatedly rebuffed appellant's attempts to express interest in her life. She feared appellant. Appellant's semen was found in the victim's vagina." *Id.* at ¶ 333.

¶{78} From this, we concluded: "That he killed her purposely while committing, attempting to commit, or fleeing immediately after committing a rape, a robbery, a burglary, and a kidnapping is clearly established by the evidence." *Id.* at ¶ 334. We elsewhere observed:

¶{79} "He essentially stalked his young neighbor until he eventually forced his way into her apartment, hit her, raped her, strangled her with a cord, tied her wrists, suffocated her, stole her car, dumped her body in the river, tried to get money from her bank account, returned to her apartment to steal her television, and cleaned up trace evidence with her potholder. After considering all of the evidence presented throughout the case, the imposition of the death penalty here is proportionate to that imposed in other similar cases." *Id.* at ¶ 366.

¶{80} As such, this court has analyzed the issue of sufficiency and found that a rational juror could find that appellant not only committed aggravated murder but also was the principal offender and that he purposely killed her while committing, attempting to commit, or was fleeing immediately after committing one or all of the offenses within the specification. Thus, appellate counsel could have separately argued sufficiency; however, as they knew we were essentially obligated to review it in

any event, it was not ineffective to fail to extend the five hundred twenty-eight page appellate brief to include this issue.

¶{81} For all of these reasons, reopening is denied.

## APPOINTMENT OF COUNSEL FOR PURPOSES OF APPLICATION TO REOPEN

¶{82} The office of the public defender filed this application to reopen on behalf of appellant after filing a notice of appearance. They seek retroactive appointment for the purpose of filing the application.

¶{83} As appellant points out, there are examples of the Ohio Supreme Court appointing counsel for purposes of filing the application for reopening. *See, e.g., State v. Turner*, 114 Ohio St.3d 1494, 2007-Ohio-4092, 871 N.E.2d 1195; *State v. Jackson*, 108 Ohio St.3d 1477, 2006-Ohio-788, 842 N.E.2d 1055. The rule applicable to reopenings in the Supreme Court is worded the same as App.R. 26(B)(6)(a). *See* S.Ct. Prac. R. 11.6(F)(1).

¶{84} Under App.R. 26(B), the appellate court need only appoint counsel to an indigent defendant if reopening is permitted and the case is then to proceed as if on initial appeal. App.R. 26(B)(6)(a). A defendant, even a capital one, has no right to counsel in order to file the application to reopen itself. *State v. Keith*, 119 Ohio St.3d 161, 2008-Ohio-3866, 892 N.E.2d 912, ¶ 7.

¶{85} As we are denying the application to reopen, we shall not be appointing counsel to proceed on reopening, and we decline to retroactively appoint the Public Defender's Office for purposes of the application they filed on appellant's behalf.


Vukovich, J., concurs.
Donofrio, J., concurs.
Waite, P.J., concurs.