[Cite as *State v. Hardin*, 193 Ohio App.3d 666, 2010-Ohio-6304.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| THE STATE OF OHIO, | : | |
| | : | |
| Appellee, | : | Case No: 10CA803 |
| | : | |
| v. | : | |
| | : | <u>DECISION AND</u> |
| HARDIN, | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Appellant. | : | File-stamped date:  12-10-10 |

_____

APPEARANCES:

Robert Junk, Pike County Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Spencer J. Cahoon, Assistant Public Defender, for appellant.

_____

KLINE, Judge.

{¶1}    Jeffrey Hardin appeals his felony-murder and endangering-children convictions.  Hardin contends that the trial court erred and admitted evidence contrary to his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution.  Hardin maintains that the testimony of the Franklin County Coroner violated his right to confrontation because the coroner was not present during the actual autopsy and relied on the observations and conclusions of a deputy coroner who actually conducted the autopsy.  Because the Supreme Court of Ohio has

previously ruled that coroner's reports are nontestimonial business records, we disagree.

{¶2}    Hardin next contends that the admission of the coroner's opinion and the opinion of another medical doctor, Dr. Scribano, violated the Ohio Rules of Evidence. Because we find that the underlying coroner's report was admissible as a self-authenticated public record, we disagree.  And we further find that any error in the admission of the notes and records relied on by Dr. Scribano was harmless. Accordingly, we affirm the judgment of the trial court.

{¶3}    The events in this case concern the death of Jeffrey Hardin Jr. ("Junior"). Junior was the son of Sasha Starkey and Hardin.  On May 11, 2009, Starkey called 9-1-1 because Junior had stopped breathing.

{¶4}    An emergency response was dispatched, consisting of both police and paramedics.  By the time the paramedics arrived, Junior was pale and cool and had no pulse.  The paramedics attempted to resuscitate Junior while they transported him to the Pike Community Hospital.  All attempts to resuscitate Junior were initially unsuccessful.  Eventually, the emergency room personnel were able to reestablish Junior's heartbeat.  Junior was then transferred to Nationwide Children's Hospital in Columbus.  The doctors reestablished a pulse but were unable to reestablish Junior's respiration.  And eventually, doctors at Nationwide Children's Hospital had little choice but to terminate Junior's life support.

{¶5}    Along with paramedics, Corporal Rick Jenkins of the Piketon Police Department responded to the 9-1-1 call.  Jenkins testified that when he arrived, Hardin was extremely distraught.  Hardin admitted that he tried to get the baby to sleep by

placing the child on a sofa and pressing up and down on the cushions, causing the baby to gently shake.

{¶6}    Jenkins also took a statement from Hardin, which stated, "I, Jeff Hardin, was having trouble with my son of 5 months.  I had shake * * *  I had shuck [sic] him a couple of times.  After that he started crying and fell asleep.  He quit breathing."  Hardin would later make a similar statement to a criminal investigator of the Pike County Prosecutor's Office.  At trial, Hardin contended that he meant "shake" in a manner similar to that described in the preceding paragraph.

{¶7}    After the child's death, the body was eventually taken to the Franklin County Coroner's Office for an autopsy.  The autopsy was conducted by Dr. Steven S. Sohn, a deputy coroner, but by the time of trial, Dr. Sohn no longer worked at the Franklin County Coroner's Office.  Therefore, his supervisor, Dr. Jan Gorniak, testified as to her opinion of the cause of death.  Dr. Gorniak testified that Junior's death was caused by a subdural hematoma due to nonaccidental head trauma.  Dr. Gorniak also testified that the death was a homicide and concluded that the injuries were caused by either blunt trauma or by shaking.

{¶8}    Dr. Phillip Scribano is the medical director of the Center for Child and Family Advocacy at Nationwide Children's Hospital.  Dr. Scribano testified that the particular injuries Junior suffered could not have been caused by the manipulation of sofa cushions as Hardin described.  Rather, Dr. Scribano testified that the injuries could have only been caused by significantly more force.  Hardin's counsel objected to the admission of both Dr. Gorniak's and Dr. Scribano's opinions.

{¶9}     After a bench trial, the trial court found Hardin guilty of the offenses of felony murder, in violation of R.C. 2903.02(B), and endangering children, in violation of R.C. 2919.22(B)(1).   The trial court sentenced Hardin to 15 years to life on the felony-murder conviction as well as six years on the endangering-children conviction, sentences to be served concurrently.

{¶10}     Hardin appeals and asserts the following two assignments of error: I. "When the court admitted the reports of multiple attending physicians and medical technicians without their testimony, Mr. Hardin's right to confront his accusers was violated."   II. "The trial court erred by allowing expert testimony when the experts had neither directly perceived the facts leading to their opinions nor was the information underlying their opinions otherwise admissible."

{¶11}     Hardin first claims that the admission of the autopsy report violated his right "o be confronted with the witnesses against him under the Sixth Amendment to the United States Constitution.   The parties largely agree on the underlying facts of the argument.   At trial, Dr. Gorniak, the Franklin County Coroner, testified as to her opinion as to what could and could not have caused the death of Junior.   Dr. Gorniak did not perform the autopsy of Junior.   Dr. Sohn instead performed the autopsy and reached a conclusion regarding the cause of death.   Dr. Gorniak testified that she had reached her conclusions independently of Dr. Sohn, but had to rely on the facts underlying Dr. Sohn's autopsy report.   Dr. Boesel, a toxicologist, also attached a toxicology report to the autopsy report.   Dr. Gorniak testified that while Dr. Boesel's report was important, she could reach her conclusions independently of that report.

**{¶12}** Because Hardin's right to confront the witnesses against him involves a constitutional issue, our review is de novo. See, e.g., *Ohio Univ. Bd. of Trustees v. Smith*, 132 Ohio App.3d 211, 223.

**{¶13}** The United States Supreme Court has recently altered the law with respect to the Confrontation Clause, starting with *Crawford v. Washington* (2004), 541 U.S. 36. The *Crawford* court held that statements elicited through police interrogation were within the "core class" of testimonial evidence, and "[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 51-52, 68.

**{¶14}** In *Crawford*, the Supreme Court declined to offer a comprehensive definition of what statements were or were not testimonial. Id. at 68. Unsurprisingly, the question of whether a particular statement was a testimonial statement became a much litigated issue. Subsequently, the Supreme Court considered the question of testimonial statements again in *Davis v. Washington* (2006), 547 U.S. 813.

**{¶15}** *Davis* actually consisted of two separate cases. In the first, the relevant statements were made to a 9-1-1 emergency operator. In the second, the police responded to a reported domestic disturbance. And in the second case, the relevant statements were given after the wife had been separately questioned on the scene by the police officers.

**{¶16}** The Supreme Court concluded that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively

indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822. Accordingly, the Supreme Court found that the statements given to the 9-1-1 operator were not testimonial, while the statements elicited during the police interrogation were testimonial. Id. at 828-829, 830.

{¶17}   After *Crawford*, the Supreme Court of Ohio considered a Confrontation Clause challenge with facts remarkably similar to the present case. See *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, at ¶ 88. The Supreme Court of Ohio held that a coroner's report was admissible notwithstanding *Crawford* because it was a nontestimonial business record. Id.

{¶18}   The United States Supreme Court revisited the question of testimonial hearsay in *Melendez-Diaz v. Massachusetts* (2009), --- U.S. ---, 129 S.Ct. 2527. In that case, the question was whether the admission of "certificates" for the purpose of establishing whether a particular substance consisted of cocaine violated the defendant's Confrontation Clause rights. Id. at 2531. The Supreme Court answered that question in the affirmative in a narrowly divided opinion. See id. at 2532.

{¶19}   Among other arguments, the *Melendez-Diaz* court rejected the state's argument that the certificates were business records. The court stated: "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because--*having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial--they are not testimonial.* Whether or not they qualify as business or official records, the analysts' statements here--prepared specifically for use at

petitioner's trial--were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment." (Emphasis added.) *Melendez-Diaz* at 2539-2540. The *Melendez-Diaz* court specifically noted that the reason that the business record exception did not render the certificates nontestimonial was because those certificates had been prepared expressly for trial. Id. at 2538. The implication is that if a document was prepared for an entity's internal needs, then that document is still nontestimonial. Therefore, notwithstanding the rejection of the majority in *Melendez-Diaz* of the business-records justification, the coroner's report in this case may still be admissible without infringing on Hardin's constitutional rights so long as it was not prepared for the purpose of litigation.

{¶20} After consideration, Hardin provides no sound basis to distinguish this case from *Craig*, 110 Ohio St.3d 306, and we can discern none from the record. And the *Craig* court, after consideration, determined that the coroner's report in that case was not prepared for the purposes of litigation and so was nontestimonial. See *Craig* at ¶ 82-88. A close reading of *Melendez-Diaz* demonstrates that the basis of *Craig*'s ruling remains good law under current United States Supreme Court precedent, and we are bound to apply *Craig*.

{¶21} Accordingly, we overrule Hardin's first assignment of error.

{¶22} Hardin next contends that the admissions of Dr. Gorniak's and Dr. Scribano's opinions were contrary to the Ohio Rules of Evidence.

{¶23} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. "An abuse of discretion involves more than an error of judgment or law; it

implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable." *State v. Voycik*, Washington App. Nos. 08CA33 and 08CA34, 2009-Ohio-3669, at ¶ 13, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. "In applying the abuse of discretion standard, we are not free to substitute our judgment for that of the trial court." *State v. Burkhart*, Washington App. No. 08CA22, 2009-Ohio-1847, at ¶ 19.

**{¶24}** Specifically, Hardin contends that the admission of Dr. Gorniak's opinion violated Evid.R. 703. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Evid.R. 703. Here, there is no question but that the basis for Gorniak's opinion was the report prepared by Dr. Sohn (among others). Hardin contends that the trial court erred in the admission of Dr. Gorniak's opinion as well as the opinion of Dr. Scribano.

**{¶25}** Hardin cites a case in which the Second District Court of Appeals held that the trial court erred in the admission of a coroner's opinion where the opinion "was based entirely on facts perceived by others and evidence that was not admitted at trial." *State v. Fouty* (1996), 110 Ohio App.3d 130, 135.

**{¶26}** In the present case, however, the trial court admitted the coroner's report into evidence. And we find that the trial court properly admitted the coroner's report as a public record. See Evid.R. 803(8); see also *State v. Sampsill* (June 29, 1998), Pickaway App. No. 97CA17, citing *Goldsby v. Gerber* (1987), 31 Ohio App.3d 268, 269, abrogated on different grounds by *State ex rel. Blair v. Balraj* (1994), 69 Ohio St.3d 310, 313-314. We note that the *Sampsill* court listed several limitations of this

rule, but none of those limitations are present in this case. In addition, we note that the report was embossed with a seal and was a self-authenticating document. Evid.R. 902(1). Therefore, Dr Sohn's report was properly admitted into evidence and could be relied upon by Dr. Gorniak in reaching her own independent conclusions under Evid.R. 703.[1]

{¶27}    Hardin next claims that the admission of Dr. Scribano's opinion also violated Evid.R. 703. Dr. Scribano testified as follows: "Within a reasonable degree of medical certainty, my diagnosis when I received the call and reviewed the x-rays and medical record uh, was abusive head trauma. That was confirmed by additional review of the photographs by our staff in the hospital, as well as the photos from the Coroner's Office. And uh, abusive head trauma that has evidence of uh, impact that is visible on physical examination, uh, but also shaking and the retinal hemorrhages uh, that are identified on autopsy that are uh, further confirmation of a shaking mechanism."

{¶28}    "Q.    * * * In your opinion, are these injuries consistent with a baby being bounced on a couch cushion?

{¶29}    "A. No.

{¶30}    "Q. Given your years of experience and training, what kind of force would be needed to exert or to cause these kinds of injuries?

{¶31}    "A. The degree of force is severe. The degree of force is such that no reasonable caregiver would ever come close to exhibiting in normal care of an infant. Uh, to ascribe a number in terms of force, in terms of [joules] as a measure of force, uh,

---

[1] We note that this finding does not conflict with the rule in *Craig*. There was no custodian of records to lay a foundation for the admissibility of the report, but, as *Melendez-Diaz* made clear, the issue under the Confrontation Clause is not whether the report satisfies a particular hearsay exception. Rather, the question is whether the evidence was prepared for the purposes of litigation.

there are biomechanic studies that look at injury thresholds and they're not adequate in answering the question. Uh we know that these forces are uh, generating injuries as severe, and worse than, severe motor vehicle crashes that require immediate life support. Uh, so that gives a context to the degree of force. But I could not provide you with an actual number or equation of force uh, right now."

**{¶32}** From Dr. Scribano's testimony, it is apparent that he relied upon more than just the autopsy report. Generally, the record indicates that these materials were other medical reports related to the care that Junior had received. Based on the record, we see no particular reason that these materials could not have been admitted as business records. But no such foundation was made in regard to these reports. Regardless, Dr. Scribano's testimony is largely duplicative of Dr. Gorniak's. Dr. Gorniak testified that the "immediate cause of death was subdural hematoma due to non-accidental head trauma." She also testified that the death was a homicide and that the injuries were caused by either blunt force trauma or a shaking mechanism.

**{¶33}** Some of the materials Dr. Scribano relied upon were neither admitted into evidence nor matters that he personally perceived. This renders the admission of his opinion error, but we find that error harmless. Under Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Ohio courts have often found that the wrongful admission of cumulative evidence constitutes harmless error. See, e.g., *State v. Davis*, Summit App. No. 22724, 2005-Ohio-6224, at ¶ 15; *State v. Jones*, Scioto App. No. 06CA3116, 2008-Ohio-968, at ¶ 23; *State v. Kingery*, Fayette App. No. CA2009-08-014, 2010-Ohio-1813, at ¶ 35, citing *State v. Fears* (1999), 86 Ohio St.3d 329, 339.

**{¶34}**     Accordingly, we overrule Hardin's second assignment of error.

**{¶35}**     Having overruled both of Hardin's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

MCFARLAND, P.J., and ABELE, J., concur.