[Cite as *State v. Coonrod*, 2012-Ohio-6302.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,               :       Case No.   11CA3

    vs.                                :

WESLEY E. COONROD, SR.,                     :       DECISION AND JUDGMENT ENTRY


    Defendant-Appellant.              :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:        Eric J. Allen, 713 South Front Street, Columbus, Ohio 43206

COUNSEL FOR APPELLEE:         Anneka P. Collins, Highland County Prosecuting Attorney,
                              112 Governor Foraker Place, Hillsboro, Ohio 45133

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-27-12
ABELE, P.J.

{¶ 1}   This is an appeal from a Pickaway County Common Pleas Court judgment of

conviction and sentence.   A jury found Wesley E. Coonrod, Sr., defendant below and appellee

herein, guilty of (1) two counts of involuntary manslaughter in violation of R.C. 2903.04(A); and (2)

two counts of third-degree felony child endangering in violation of R.C. 2919.22(A).

{¶ 2}   Appellant raises the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION BY
DISMISSING A JUROR WITHOUT JUST CAUSE IN VIOLATION
OF OHIO STATE LAW, OHIO CONSTITUTIONAL LAW, IN

ADDITION TO THE FIFTH AND SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ALLOWING JOYCE KRECH TO TESTIFY AS AN EXPERT TO WHETHER THE APPELLANT WAS INTOXICATED IN VIOLATAION [SIC] OF OHIO STATUTORY LAW, OHIO CONSTITUTIONAL LAW AS WELL AS IN VIOLATION OF THE FIFTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT."

THIRD ASSIGNMENT OF ERROR:

"THERE WAS INSUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF INVOLUNTARY MANSLAUGHTER IN VIOLATION OF OHIO STATE LAW, OHIO CONSTITUTIONAL LAW IN ADDITION TO THE FIFTH AMENDMENT OF THE FEDERAL CONSTITTION [SIC] MADE APPLICABLE TO THE STATES BY THE FOURTHEENTH [SIC] AMENDMENT."

FOURTH ASSIGNMENT OF ERROR:

"THERE WAS INSUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF CHILD ENDANGERMENT IN VIOLATION OF OHIO STATE LAW, OHIO CONSTITUTIONAL LAW IN ADDITION TO THE FIFTH AMENDMENT OF THE FEDERAL CONSTITTION [SIC] MADE APPLICABLE TO THE STATES BY THE FOURTHEENTH [SIC] AMENDMENT."

FIFTH ASSIGNMENT OF ERROR:

"THE TERM OF INCARCERATION IMPOSED BY THE TRIAL COURT WAS ARBITRARY AND CAPRICIOUS IN VIOLATION OF OHIO STATE LAW, OHIO CONSTITUTIONAL LAW AS WELL AS THE EIGHTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH."

{¶ 3}   On March 7, 2010, a fire broke out at the appellant's apartment.   Appellant lived at

the apartment with his four-year old and three-year old sons.  Appellant escaped the fire. Tragically, however, the two children did not escape and suffered fatal injuries.

{¶ 4}   An investigation led investigators to believe that the fire was set intentionally. Investigators discovered a can of lighter fluid near the apartment and a lighter located on the floor. The state's investigators believed that someone poured an ignitable liquid to start the fire.  The state's investigation further showed that the apartment's windows and doors had been locked.

{¶ 5}   A Highland County Grand Jury returned a seven-count indictment against appellant for the following offenses: (1) two counts of aggravated murder, with specifications, in violation of R.C. 2903.01(B); (2) aggravated arson in violation of R.C. 2909.02(A)(2); (3) two counts of murder in violation of R.C. 2903.02(B); and (4) two counts of child endangering in violation of R.C. 2919.22(A).

{¶ 6}   On September 27 through October 4, 2010, the Highland County Common Pleas court held a jury trial.  At the conclusion of the trial, the jury found appellant guilty of two counts of child endangering.  The jury, however, could not reach a verdict regarding the remaining five counts, and the court declared a mistrial.  The court delayed sentencing until the remaining counts had been resolved.

{¶ 7}   Subsequently, the state notified the court that it intended to retry appellant for one count of aggravated arson and two counts of murder.

{¶ 8}   Before the second trial began, the court transferred venue to Pickaway County.  At trial, the state argued that appellant intentionally set the fire, left his children trapped inside the burning building, then stood idly by while the children screamed for their lives.  The investigator that the landlord's insurance company hired, James David Hunter, testified that he did not believe

that a three- or four-year old child started the fire. He explained that a young juvenile fire starter usually engages in basic fire starting, such as setting a leaf on fire. He stated that a young juvenile typically would not introduce "an ignitable liquid into a structure" or set "multiple rooms on fire." Hunter believed that the fire resulted from an intentional act of arson.

{¶ 9}   Paint Creek EMS Firefighter James Michael Gilbert testified that he responded to the fire. Gilbert observed that appellant appeared to be "in a dazed state." Gilbert repeatedly asked appellant where the children were located, but appellant did not respond. Gilbert also noticed that appellant did not have any soot on him and did not appear to be injured.

{¶ 10} Former Greenfield police officer James Dale Dunn, Jr. testified that he observed appellant at the hospital where his children had been transported. Dunn observed appellant's bloodshot eyes and erratic behavior. One minute appellant was nice and calm, and the next he would stiffen, "like he was ready to fight the world." Dunn believed that appellant was under the influence of "something."

{¶ 11} Appellant's neighbor, Benjamin Kelly Stockton, testified that he broke a window to enter appellant's burning apartment. He stated that he heard the children screaming and that he tried to locate them. When Stockton saw appellant, he asked him where the children were. Appellant did not tell Stockton where to locate the children, but appellant did "ask[ Stockton] for a cigarette."

{¶ 12} Jason Jenkins, another bystander, also attempted to rescue the children. When he first arrived on the scene, he saw appellant "around the back * * * standin' on the [back] porch." Jenkins stated that appellant was peering in the window. Jenkins asked appellant where the children were and appellant stated, "I don't know." Jenkins told appellant to get out of the way

and kicked in the door. Jenkins tried to enter the apartment, but the smoke was too heavy. Jenkins then tried to enter through the windows and the front door, but he discovered that they were all locked. Jenkins explained that after the Life Squad arrived, he asked appellant where in the house the children were and appellant "was just like dazed." After "25, 30 times," appellant finally told Jenkins, "Me and the kids were in the back bedroom asleep." Jenkins also stated that appellant never attempted to enter the apartment to save his children. Jenkins testified that "the only thing [appellant] ever did was he asked [Jenkins' fiancé] for a cigarette." Jenkins further explained that he detected a "very strong" odor of alcohol when he spoke with appellant.

{¶ 13} Rhonda Lester, Jenkins' fiancé, stated that she heard the children screaming as Jenkins and Stockton attempted to rescue them. Lester stated that appellant did not attempt to help, but, instead, asked if anyone had a cigarette. Lester likewise testified that appellant smelled like alcohol.

{¶ 14} Dara Gullett, a counselor at Alternatives to Violence Center, testified that she overheard a conversation between appellant and his former wife, Felicia Elliott, while at the funeral home. According to Gullett, appellant told Elliott that "he had tried to do everything he could to get the boys out of the house." Appellant told Elliott that Thomas fell asleep on the couch and that Steven had been in the bedroom with him. Later, appellant changed his story and told Elliott that both boys were in sleeping bags in their bedrooms. Appellant changed his story again and told Elliott that he did not know where the boys were. Gullett explained that appellant's hand was bandaged and that she heard him tell Elliott that he injured his hand trying to open the boys' bedroom door. Later, appellant stated that he was unable to reach the boys' bedroom because the fire in the hallway was too hot. Gullett also heard appellant admit that he had been

drinking on the night of the fire.

{¶ 15} Elliott testified that appellant told her different versions of the events that preceded the fire.   She stated that appellant told her that (1) Thomas was asleep on the couch and Steven was in bed with appellant; (2) the boys were asleep in bed with appellant; and (3) appellant escaped through a window and then looked inside the back window to determine whether he could enter the apartment to save the boys.

{¶ 16} Joyce Krech, an Adena Greenfield Area Medical Center nurse, testified that she encountered appellant after his children were admitted to the hospital.   She stated that appellant was "very aggressive" and that she tried to comfort him by putting her hand on his shoulder. Appellant stated, "Get the fuck off of me."   Krech stated that appellant was loud, swearing, and stumbling and that "[h]e had a very strong odor of alcohol about him."   She stated that the odor of alcohol was "very, very strong" and that she could smell it from two to three feet away.   Krech testified that she believed appellant was under the influence of alcohol.

{¶ 17} State Fire Marshal's Office Investigator Trace Lawless testified that he spoke with appellant to determine what happened.   Lawless recalled that appellant stated that he and the boys watched television and when Steven fell asleep, he carried him to the front bedroom.   Later, Thomas fell asleep in the front bedroom.   Appellant stated that he drank between four and five beers and went to bed around 11:00 p.m.   Later, he awoke to smoke.   He grabbed his bedroom door handle and it burned his fingers.   Appellant stated that he saw the fire in the hallway and was unable to cross the hallway to reach the children's bedroom.   Appellant stated that he escaped the apartment through the rear bedroom window.   He also explained that he then tried to kick open the back door.

{¶ 18} Lawless observed the burns on appellant's hands and testified that they were not consistent with the type of burns one would ordinarily receive from contacting a metal object, like a door knob. Lawless stated that contact with a metal object would leave a "singeing burn," not the "blistering burn" that he observed on appellant's hands. Lawless explained that a "blistering burn" results "from radiating heat, not direct contact with metal objects."

{¶ 19} Lawless further explained that he did not believe appellant's version of events that he exited the building through the rear bedroom window. Lawless stated that the fire pattern around the window did not indicate that the window had been opened during the fire.

{¶ 20} In his defense, appellant presented experts who opined that the cause of the fire was undetermined and that an ignitable liquid was not used to start the fire. Appellant also presented testimony from family members who stated that appellant did not smell like alcohol on the night of the fire.

{¶ 21} Appellant also testified in his defense. He stated that when he opened his bedroom door and saw the fire, he shut the door and exited through the back window. He then tried to kick in the back door. Appellant denied the witnesses' statements that he did nothing, other than ask for a cigarette. Appellant stated that he "was trying to get to my children." When questioned about Gullett's testimony about what she overheard at the funeral home, appellant stated: "I don't know what Mrs. Gullett is talking about, sir, but I wasn't talking about nothing other than making funeral arrangements for my dead children."

{¶ 22} After the court submitted the case to the jury, the jury foreman, Juror Number 4, sent a letter to the court that stated:

> "We have a beligerent [sic] juror. I believe she has been in a similar

situation as the defendant.  She had a fire in her house, and sent her son upstairs in a smoke filled house.  She is taking all discussions personal [sic].  I think we could reach a decision if she were replaced with one of the alternative [sic] jurors.  Is this possible?"

{¶ 23} The court met in chambers with appellant, his attorneys, the prosecutors, and the foreman to discuss the concern.  The foreman advised the judge that the juror, Juror Number 5, had stated:      "Basically that she was a single parent, she was a heavy smoker, the kids would climb on cabinets, they would be up all hours of the day or the night as young as two or three, she didn't get up to see what they were doing or — "  The court interjected to explain that it was "more interested in * * * her experiences about fire."  The foreperson then explained:

"She said that her son, basically started the house fire.  She was out burning trash in the yard and that he was trying to help mommy and started a house fire burning trash inside the house.  And she froze.  I don't know what other adults were around or whatever, but she sent her son up to his smoke filled bedroom, and that if he had died, then charges would have been brought [against] her."

The court asked whether the juror indicated "that * * * she's using this experience as part of her decision making process?"  The foreperson responded:

"Yes.  She's taking it very personal[ly].  She's identifying —

The Court: And it doesn't mean that she's saying it's interfering with her deliberations or —

Juror No. 4: I didn't ask her specifically.  It started with everything that was being brought up by other jurors in trying to answer her objections or to find out more about it and so on.  It was evident, very evident to most of the jurors that she was taking it personally, that she was identifying with the defendant and — "

The foreperson further explained the juror's body language:

"When we were talking about the different things and reading the law and stuff, she was — had her arms crossed, leaned back, rolling her eyes, flipping her hair, like I took some notes when I went home that night so I would remember it, and it was — her body language was like a teenager that got caught doing

something she wasn't supposed to do and was getting lectured by her parents.   She was paying attention to no one."

{¶ 24}  The court then questioned Juror Number 5.   She stated that the fire happened approximately twenty years ago.   She explained that her four- or five- year old child imitated her by setting the trash on fire.   She stated that she did not mention it during voir dire because she "didn't even think about it."   The fire department was not called, no one was injured, and "it was just a little trash fire."   The court asked whether her prior experience had any impact upon [her] consideration of the case."   She stated that it did not.   The court nonetheless dismissed her and explained:

> "* * * In this case we had specific information from the jury, and we have a situation where something that is so similarly, eerily similar here to the situation, and the foreman's statement, it is only his opinion that she's identifying with the defendant.   But, given the nature of what she just told me, and based upon R.C. 2313.43, which provides that any petit juror may be challenged on suspicion or prejudice against or impartiality for either party, and the last sentence of that statute provides that 'the validity of such challenged shall be determined by the court and shall be sustained if the court has any doubt as to the juror's being entirely biased.'
>
> It is the court's belief, based upon the information that she's admitted to as far as her experience and her understanding, that she didn't — the record does not say or does not support a finding she withheld it intentionally, but it — I don't think that is required."

{¶ 25}  On February 1, 2011, the jury found appellant not guilty of aggravated arson and two counts of murder, but guilty of two counts of involuntary manslaughter.   The trial court merged the child endangering and involuntary manslaughter counts, and the state elected to proceed with sentencing on the involuntary manslaughter counts.   The court sentenced appellant to ten years on each count, to be served consecutively.   This appeal followed.

I

{¶ 26} In his first assignment of error, appellant asserts that the trial court's dismissal of Juror Number 5 constitutes an abuse of discretion.

{¶ 27} "A trial judge is empowered to exercise '"sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired."'" State v. Brown, 2nd Dist. No. 24541, 2012-Ohio-1848, ¶46, quoting State v. Hopkins, 27 Ohio App.3d 196, 198, 500 N.E.2d 323 (11th Dist. 1985), quoting United States v. Spiegel, 604 F.2d 961, 967 (C.A.5, 1979). A reviewing court will not disturb a trial court's ruling regarding a challenge for cause "'unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion.'" State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶38, quoting State v. Williams, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997). Furthermore, a reviewing court must afford "'deference * * * to the trial judge who sees and hears the juror.'" Williams, 79 Ohio St.3d at 8, quoting Wainwright v. Witt, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

{¶ 28} Under both R.C. 2945.25(B) and Crim.R. 24(C)(9), a trial court may excuse a juror for cause if the court determines that the juror "is possessed of a state of mind evincing enmity or bias toward the defendant or the state." Those provisions further provide that a trial court shall not disqualify a juror "by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence

submitted to the jury at the trial."   Additionally, former R.C. 2313.43[1] stated that a juror could be challenged for cause "on suspicion of prejudice against or partiality for either party * * *.   The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased."   "On a challenge for cause, '[t]he ultimate question is whether the "juror sw[ore] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed."'"   State v. Perez, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶140, quoting White v. Mitchell, 431 F.3d 517, 538 (C.A.6, 2005), quoting Patton v. Yount, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

{¶ 29} In the case sub judice, we are unable to conclude that the trial court abused its discretion by excusing Juror Number 5.   Although the written transcript reveals that Juror Number 5 stated that her prior experience with a child setting a fire did not render her partial to appellant, the trial court actually observed Juror Number 5 when she explained the prior experience and when she stated that it would not affect her ability to render an impartial verdict.   Because the trial court saw and heard the juror, including her demeanor, gestures and voice inflections, we must defer to the trial court's determination.   The court rationally could have determined that the juror's prior experience rendered her unable to consider the evidence in the trial in an unbiased manner, despite her protestation to the contrary.

{¶ 30} Moreover, even if we assume that the trial court erred by excusing Juror Number 5, appellant has not shown how this alleged error prejudiced him.   Crim.R. 52(A) provides: "Any

---

[1] This provision has been repealed and re-codified at R.C. 2313.17(C).

error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

In other words the error must have been prejudicial, i.e., it must have affected the outcome of the

trial.   State v. Fisher, 99 Ohio St.3d 127, 2003–Ohio–2761, 789 N.E.2d 222, ¶7.

{¶ 31} In the case at bar, appellant did not explain how the dismissal of Juror Number 5

affected the outcome of the trial.   Any argument that Juror Number 5 would have voted to acquit

is speculative.   Thus, even if the trial court somehow erred when it excused Juror Number 5,

appellant fails to demonstrate how the error is anything other than harmless error.   See Brown,

supra, ¶53 (observing that appellant's claim that juror excused during deliberations was "likely

favorable" to him was "wholly speculative" and that appellant failed to argue that the alternate

juror's participation prejudiced him).

{¶ 32} Appellant further argues that because the original indictment charged him with a

capital offense, the trial court owed him a heightened duty.   We observe, however, that after

appellant's first trial ended in a mistrial, the state dismissed the aggravated murder charges.   Thus,

appellant no longer faced any capital offenses and we reject his argument.

{¶ 33} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first

assignment of error.

II

{¶ 34} In his second assignment of error, appellant asserts that the trial court abused its

discretion by permitting a nurse, Joyce Krech, to testify as an expert witness regarding whether

appellant was intoxicated on the night of the fire.   He contends that the prosecutor's reference to

Krech's "training and experience in [her] 33 years as a nurse" converted Krech's lay testimony into

expert testimony.

{¶ 35} Generally, appellate courts review trial court evidentiary rulings under the abuse of discretion standard of review.  E.g., State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶75; State v. Sage, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.  An abuse of discretion constitutes "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."  State v. Adams, 62 Ohio St.2d 151, 158, 404 N.E.2d 144 (1980); e.g., State v. Kalish, 120 Ohio St.3d 23, 2009-Ohio-4912, 896 N.E.2d 124, ¶19.

{¶ 36} Evid.R. 702(A) states that "[a] witness may testify as an expert if * * * [t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons * * *."  "[S]obriety or lack thereof is commonly recognized by courts to be within the perception of a lay witness."  State v. Wargo, 11th Dist. No. 96T5528 (Oct. 31, 1997); accord State v. Stewart, 11th Dist. No. 2001-A-0011, 2002-Ohio-3842, ¶34; State v. Davis, 4th Dist. No. 01CA12, 2002-Ohio-2036, ¶9.  Whether an individual was intoxicated ordinarily is not be beyond the experience possessed by lay persons. Thus, expert testimony on the issue is not always necessary.

{¶ 37} Under Evid.R. 701, a lay "witness may express an opinion [regarding intoxication] when it is 'rationally based on the perception of the witness' and 'helpful to a clear understanding of his testimony or the determination of a fact in issue.'" Davis at ¶9, citing Logan v. Randolph, 4th Dist. No. 98CA18 (May 10, 1999) (holding that under Evid.R. 701, a police officer may give opinion evidence on the issue of intoxication); accord Stewart, at ¶34, quoting In re Litterst, 11th Dist. Nos. 97-L-135 and 97-L-136 (June 26, 1998) ("Moreover, it is also well established that, 'a police officer may provide lay testimony under Evid.R. 701 as to his or her opinion concerning a

defendant's state of intoxication.'"). "In order to be admissible, the state must establish the proper foundation by eliciting testimony from the witness to the effect that he or she has had previous experience observing intoxicated people." Wargo, supra; accord Davis at ¶9.

{¶ 38} In the case sub judice, the state did not seek to qualify Krech as an expert in intoxication under Evid.R. 702. Rather, the state requested Krech to give her lay opinion as to whether appellant appeared intoxicated. The prosecutor was entitled to lay a foundation by asking Krech whether she had prior experience observing intoxicated people, before requesting her to provide her lay opinion as to whether appellant was intoxicated. The reference to Krech's "training and experience" did not convert her testimony from lay to expert. Instead, it presented the jury with a reason why Krech rationally could have perceived that appellant was intoxicated. Thus, appellant's assertion that Krech testified as an expert in incorrect.

{¶ 39} Moreover, even if the trial court somehow abused its discretion by allowing Krech to testify that she believed appellant was intoxicated, the error would be harmless. Generally, when a trial court erroneously admits evidence that is cumulative of properly-admitted evidence, the error constitutes harmless error. State v. Hardin, 193 Ohio App.3d 666, 2010-Ohio-6304, 953 N.E.2d 847, ¶33 (4th Dist.), citing State v. Davis, 9th Dist. No. 22724, 2005-Ohio-6224,¶15; State v. Jones, 4th Dist. No. 06CA3116, 2008-Ohio-968, ¶23; State v. Kingery, 12th Dist. No. CA2009–08–014, 2010-Ohio-1813, ¶35. In the case at bar, even if the trial court erred when it permitted Krech's testimony, Krech's testimony was cumulative to many other witnesses' testimony. Multiple witnesses observed appellant on the night of the fire and testified that he appeared intoxicated, or that he exhibited a strong odor of alcohol. Thus, any error admitting Krech's testimony constitutes harmless error.

{¶ 40} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

III

{¶ 41} Appellant's third and fourth assignments of error challenge the sufficiency of the evidence. For ease of analysis, we consider them together.

{¶ 42} In his third assignment of error, appellant asserts that the state failed to present sufficient evidence to support his involuntary manslaughter convictions. In his fourth assignment of error, appellant asserts that the state failed to present sufficient evidence to support his child endangering convictions.

A

STANDARD OF REVIEW

{¶ 43} Our standard of review when considering a sufficiency of the evidence claim is well-established:

> "A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. '[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d, 212, paragraph one of the syllabus."

State v. Hunter, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118.

> "The sufficiency-of-the-evidence test 'raises a question of law and does not allow us to weigh the evidence.' [State v.] Smith, [4th Dist. No. 06CA7,]

2007-Ohio-502, ¶34, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Instead, the sufficiency-of-the-evidence test '"gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Smith, 2007-Ohio-502, 2007 WL 357274, at ¶34, quoting Jackson at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This court will 'reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact.' Smith, 2007-Ohio-502, 2007 WL 357274, at ¶ 34, citing State v. Thomas (1982), 70 Ohio St.2d 79, 79–80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus."

State v. Knowlton, — Ohio App.3d —, 2012-Ohio-2350, 971 N.E.2d 395, ¶11 (4th Dist.)

B

OFFENSES

{¶ 44} The jury returned guilty verdicts for involuntary manslaughter and child endangering. The involuntary manslaughter statute, R.C. 2903.04, states: "(A) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2919.22(A) sets forth the offense of child endangering: "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." A violation of R.C. 2919.22(A) is a third-degree felony if it results in serious physical harm to the child. R.C. 2919.22(E)(2)(c).

{¶ 45} To determine whether the state presented sufficient evidence to support appellant's involuntary manslaughter conviction, we first must examine whether the state presented sufficient evidence that appellant committed a felony, i.e., third-degree felony child endangering.

1

Child Endangering

{¶ 46} R.C. 2919.22(A) sets forth the essential elements of the crime of child endangering:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * * *

Thus, a successful R.C. 2919.22(A) conviction requires proof that: (1) a parent, guardian, custodian, or person having custody or control over (2) a child under eighteen years of age (3) recklessly created a substantial risk to the health or safety of the child (4) by violating a duty of care, protection, or support. When a defendant is charged with third-degree felony child endangering, the state also must prove that the defendant's R.C. 2919.22(A) violation resulted in serious physical harm to the child. State v. Newman, 4th Dist. No. 94 CA 2079 (Aug. 18, 1995), citing State v. Barton, 71 Ohio App.3d 455, 462-463, 594 N.E.2d 702 (1st Dist. 1991), State v. Elliott, 10th Dist. Nos. 94APA08–1274 and 94APA08–1275 (June 22, 1995), and State v. Kirk, 10th Dist. No. 93AP–726 (Mar. 24, 1994).

{¶ 47} R.C. 2901.22(C) defines "recklessly"[2] as follows:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶ 48} R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as

---

[2] Although R.C. 2919.22 does not specify a mental state, the Ohio Supreme Court has determined that recklessness is the appropriate mental state. State v. McGee, 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus (1997).

contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶ 49} "R.C. 2919.22(A) is aimed at preventing acts of omission or neglect." Newman, supra, citing State v. Sammons, 58 Ohio St.2d 460, 391 N.E.2d 713 (1979), and State v. Kamel, 12 Ohio St.3d 306, 308, 466 N.E.2d 860 (1984). Thus, "[a]n inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." Kamel at paragraph one of the syllabus.

{¶ 50} In the case sub judice, appellant challenges whether the state presented sufficient evidence to show that he recklessly created a substantial risk to the children's health or safety by violating a duty of protection or care. Appellant claims that the children's death resulted from a tragedy, not from his failure to discharge a duty of care or protection. He asserts that he "tried to keep [his] smoking materials up and away from [the children]. He bought a fire extinguisher. He moved into a home he thought hadworking [sic] smoke detectors. The trial court thought he should have kept his smoking materials in a lock box. The trial court thought he should die with his children. This is not what the law requires."

{¶ 51} After our review of the evidence presented at trial, we believe that the state presented sufficient evidence to establish that appellant recklessly created a substantial risk to the children's health and safety by violating a duty of care or protection. Contrary to appellant's argument, this is not simply a situation in which appellant failed to secure smoking materials, or in which he failed to run into a burning building to save his children. Instead, appellant left his two screaming children inside a burning house and, if the state's evidence is believed, did nothing to help them. See Sammons, supra, at 463 (stating that "to stand by and do nothing to prevent the

torturous branding of one's children * * * meets no standard, however abysmally low"). Appellant did not tell anyone where to find the children.   Several bystanders attempted to rescue the children from the fire, but the only thing appellant did was ask for a cigarette.   Appellant showed no interest in even aiding an attempt to rescue his children.   See id. (stating that "[t]he norm in our society is for a parent to strive to see that his children are * * * reasonably protected from harm").

{¶ 52} Furthermore, the state presented evidence that appellant exited the burning house through the front door, then locked the door on his way out, creating, in essence, a trap for the children.   Multiple witnesses also testified that appellant smelled of alcohol and appeared intoxicated.   The foregoing evidence would allow a reasonable jury to conclude that appellant violated a duty of care or protection to his children.   Even if appellant did not have a duty to run into a building burning to save his children, he did have a duty not to become so intoxicated that he was unable to provide assistance in locating his children.   He also had a duty not to create a trap for the children by locking all doors and windows.

{¶ 53} Moreover, appellant's actions on the night of the fire are truly disturbing. According to the state's witnesses, appellant stood idly by while his children were inside the burning house, screaming for help.   In short, appellant's apathetic attitude on the night of the fire permitted a reasonable jury to conclude that appellant exhibited a heedless indifference to his children's safety and perversely disregarded the known risk that if the children were not rescued, they would suffer serious and substantial injury–which they obviously did in this case.   His "inexcusable failure to act in discharge of [his] duty to protect" his children resulted in a substantial risk to the children.   Thus, the state presented sufficient evidence to show that

appellant committed third-degree felony child endangering.

{¶ 54} While we recognize that appellant presented conflicting and contrary evidence, a sufficiency of the evidence argument does not permit us to weigh competing versions of the facts. Instead, we must review the record, in the light most favorable to the state, to determine whether the state presented sufficient evidence to prove its case. Thus, arguments concerning conflicting evidence are misplaced in the sufficiency-of-the-evidence context. Knowlton, supra; State v. Long, 1st Dist. No. C-110160, 2012-Ohio-3052, ¶48 (stating that when reviewing the sufficiency of the evidence, a reviewing court may not "resolve evidentiary conflicts"); accord State v. Willard, 144 Ohio App.3d 767, 777-778, 761 N.E.2d 688 (10th Dist. 2001). Appellant cannot, therefore, point to conflicting testimony to support his claim that the state failed to present sufficient evidence to support his convictions.

2

INVOLUNTARY MANSLAUGHTER

{¶ 55} Appellant also argues that the state failed to present sufficient evidence to support his involuntary manslaughter convictions. He raises the same essential arguments that he raised when he argued that the state failed to present sufficient evidence to support his child endangering convictions, i.e., that he did "everything humanly possible to make sure this home was safe from fire for his children." As we have already explained, however, this case is not so much about appellant's actions before the fire, but about his inaction after the fire. Even if appellant took steps to prevent his children from starting a fire, once that fire started, he failed to take any steps to protect his children. In fact, appellant allowed his children to scream for their lives inside the house while he did nothing to help or to help others find the children. Consequently, we cannot

agree with appellant that the state failed to present sufficient evidence to support his involuntary

manslaughter convictions.

{¶ 56} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third

and fourth assignments of error.

IV

{¶ 57} In his fifth assignment of error, appellant asserts that the trial court abused its

discretion by imposing a twenty-year term of incarceration.

{¶ 58} Appellate courts use a two-step approach to review a felony sentence:

"First, [we] must examine the sentencing court's compliance with all applicable
rules and statutes in imposing the sentence to determine whether the sentence is
clearly and convincingly contrary to law.   If this first prong is satisfied, the trial
court's decision shall be reviewed under an abuse-of-discretion standard."

State v. Kalish, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, ¶4.

{¶ 59} In analyzing whether a sentence is contrary to law, "'[t]he only specific guideline is

that the sentence must be within the statutory range[.]'"   State v. Hines, 4th Dist. No. 09CA36,

2010–Ohio–2749, ¶7, quoting State v. Ross, 4th Dist. No. 08CA872, 2009–Ohio–877, ¶10.

Additionally, courts must consider the general guidelines set forth in R.C. 2929.11 and 2929.12.

Kalish at ¶13.

{¶ 60} If a defendant's sentence is not contrary to law, then an appellate court must review

a trial court's sentence under an abuse of discretion standard.   Id. at ¶4.   "The term 'abuse of

discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is

unreasonable, arbitrary or unconscionable."   State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d

144 (1980).   Sentencing courts "have full discretion to impose a prison sentence within the

statutory range and are [not] required to make findings or give their reasons for imposing maximum * * * or more than the minimum sentences." State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus; Kalish at ¶11. "Nevertheless, as mentioned above, courts must still consider the general guidance factors set forth in R.C. 2929.11 and R.C. 2929.12." State v. Voycik, 4th Dist. Nos. 08CA33 & 08CA34, 2009–Ohio–3669, ¶14.

{¶ 61} In the case sub judice, we conclude that the trial court did not improperly apply the law and it did not abuse its discretion when it sentenced appellant. Appellant's ten-year prison sentence for each offense falls within the statutory range for a first-degree felony. R.C. 2929.14(A)(1) ("For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years."). The trial court's decision to impose a ten-year prison sentence on each count is not unreasonable, arbitrary, or capricious. Instead, the court relied upon appellant's complete abdication of his duty to protect his children from harm, his clear failure to provide any assistance to the bystanders who risked their lives in an attempt to gain access to his house to save his children, and his indifferent attitude when questioned where the children where located. Appellant nonetheless asserts that the court's sentence is arbitrary because "[t]he judge did not appreciate the veracity of [his] story." However, the judge had no obligation to believe appellant's story that he tried to save his children from the fire.

{¶ 62} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fifth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.